SQUARE LAKE HILLS CONDOMINIUM ASSOCIATION v
BLOOMFIELD TOWNSHIP

Docket No. 87631. Argued December 6, 1990 (Calendar No. 10).
Decided June 11, 1991. Rehearing denied *post,* 1280.

Square Lake Hills Condominium Association brought an action in
the Oakland Circuit Court against Bloomfield Township, chal-
lenging township ordinances nos. 340 and 397, which limited
the use of lakes within the township by riparian and non-
riparian property owners. The court, Norman L. Lippitt, J.,
concluded that *Fox & Associates, Inc v Hayes Twp,* 162 Mich
App 647 (1987), prohibited the township from regulating boat
docking and launching under both the Township Rural Zoning
Act, MCL 125.271; MSA 5.2963(1), and the township ordinance
act, MCL 41.181; MSA 5.45(1). The Court of Appeals, DANHOF,
C.J., and HOOD and MARILYN J. KELLY, JJ., affirmed in an
unpublished opinion per curiam (Docket No. 109880). The
township appeals.

In an opinion by Justice RILEY, joined by Justices BRICKLEY
and GRIFFIN, and an opinion by Justice BOYLE, the Supreme
Court *held:*

Bloomfield Township has authority under the township ordi-
nance act to regulate boat docking and launching by limiting
those activities on the basis of lake frontage held by riparian
owners.

Justice RILEY, joined by Justices BRICKLEY and GRIFFIN,
stated further that townships have authority under the town-
ship ordinance act to regulate boat docking and launching for
the protection of the health, safety, and welfare of persons and
property within their communities.

Under the separation of powers doctrine, township regula-
tions enacted under the township ordinance act are not subject
to judicial intervention absent an abuse of discretion, excessive
use of power, or an error of law. The court's function is to
determine whether a township ordinance is within the range of
conferred discretionary powers and then determine if it is
reasonable. The reasonableness of an ordinance, while a ques-
tion of law, depends upon the particular facts in each case. The
test of determining whether an ordinance is reasonable re-
quires an assessment of the existence of a rational relationship

between the exercise of the police power and the public health, safety, morals, or general welfare in a particular manner in a given case. Under the Michigan Constitution, courts are required to liberally construe all legislative and constitutional powers conferred upon townships.

The township ordinance act was intended to grant townships the authority to resolve local matters. It provides the statutory mechanism for a township to adopt and enforce regulations, purely local in nature, to enhance the health and safety within its community. The regulation of boat docking and launching on inland lakes is a reasonable use of township police power. Ordinance no. 397 is not a zoning ordinance because it does not regulate the use of land or frontage, but rather regulates an activity. Under the township ordinance act, townships may enact ordinances regulating boat docking and launching on inland lakes as a measure to protect the public health, safety, and welfare of persons and property within a township. Each of the reasons given by the township for enacting ordinance no. 397, that the lack of regulation resulted in a nuisance condition, an impairment of important and irreplaceable natural resources, the destruction of property values, and a threat to public safety, health, and welfare, addresses a legitimate governmental interest. The township determined that it was necessary to regulate boat usage on its inland lakes in order to preserve and protect the health, safety, and welfare of persons using the inland lakes, as well as the riparian property owners who enjoy the lake. The objective sought to be achieved by the ordinance, requiring a minimal amount of lake frontage for boat dockage through a uniform scheme of regulation to lessen the congestion and density of boats docked and launched around Square Lake, is a legitimate use of the township police power under the act.

Justice BOYLE, concurring, stated that Bloomfield Township has the authority under the township ordinance act to define the level of motorboat activity on its inland lakes by limiting the activity in relation to the amount of lake frontage held by riparian owners.

Reversed and remanded.

Justice LEVIN, dissenting, stated that the actions of Bloomfield Township, in distinguishing through the provisions of ordinance no. 397 between property owners on the basis of location of land and the dimensions of owners' interests, substantially affected and interfered with the use and enjoyment of back lots and thus constitute zoning.

A zoning regulation may not be enacted by a local unit of

government under a general delegation of the police power such as the township ordinance act. Such a regulation may be enacted by a local unit of government only when the Legislature has delegated specifically to the local unit the power to enact the zoning regulation, ordinarily through enactment of a zoning enabling act such as the Township Rural Zoning Act. Unless a regulation is enacted in strict compliance with the provisions of a zoning enabling act, it is invalid. Because ordinance no. 397 was not enacted pursuant to the procedures prescribed by the Township Rural Zoning Act, the ordinance is not valid.

The police power resides in the state. Cities, townships, and other local units of government may only exercise police power to the extent it has been delegated to them by the state. A municipality may not avoid the substantive and procedural limitations of a zoning enabling act by claiming that an ordinance that zones is valid as an enactment pursuant to the general police power. Unless the procedural requirements of a zoning enabling act for the enactment of a zoning ordinance are strictly adhered to, the enactment is not valid.

Ordinance no. 397 is a zoning ordinance. It both substantially affects and interferes with the use and enjoyment of back land. It was designed to deny motorboat lake access to landowners having property rights in lake frontage where the land is in a back-lot zone and not within a frontage zone. Such a limitation is zoning, and not an activity akin to a parking regulation.

Chief Justice CAVANAGH, concurring with Justice LEVIN, stated that the ordinance is an exercise of the township's zoning power. Riparian owners enjoy exclusive rights, including the right to erect docks and anchor boats. Riparian rights are property rights the nature of which does not prevent the township from regulating the right, but requires it to do so under the Township Rural Zoning Act. Since the ordinance was enacted without regard to the public hearing provisions of the TRZA, it must fail.

Under the township ordinance act, the township may regulate activities upon the lake, but the ordinance does more than regulate, it restricts the riparian rights of the property owners on the basis of the length of lake frontage.

Justice MALLETT took no part in the decision of this case.

*Bodman, Longley & Dahling* (by *James J. Walsh and Martha B. Goodloe*) for the plaintiff.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton*

(by *William P. Hampton* and *Gerald A. Fisher*) for the defendant.

Amici Curiae:

*Peterson, Hay & Comsa, P.C.* (by *Mark S. Mackley*), for Harrison Charter Township.

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham* and *Lynda E. Thomsen*), for Michigan Townships Association.

RILEY, J. The question before the Court is whether townships have the authority to regulate by ordinance boat docking and launching under the township ordinance act, MCL 41.181; MSA 5.45(1). We hold that townships have the authority to regulate boat docking and launching for the protection of the health, safety, and welfare of persons and property within their communities under the township ordinance act. Accordingly, we vacate the decision of the Court of Appeals and remand this case to Oakland Circuit Court to enter an order pursuant to this opinion.

I

In the early 1960s, Milton and Barbara Sloban owned land adjacent to Square Lake in Bloomfield Township zoned as single-family residential use. The Slobans, who requested and were denied a variance to build apartments on their property, challenged the township's zoning classification. Following trial, Judge Arthur E. Moore, Oakland Circuit Court, entered a judgment invalidating the township's single-family zoning classification as applied to the Square Lake property and authorized multiple-family residential use.

The Slobans split the property in two, conveying

the back-lot portion and an easement of 160 feet of beach frontage to Square Lake Apartments, Inc. (Phase One), and retained the front-lot portion adjacent to Square Lake. A few years later, the Slobans developed the lake-front property (Phase Two) into seventy-eight multifamily rental units.[1] With the two apartment complexes in place, approximately forty homes and 152 multifamily units had access to Square Lake.

Square Lake Apartments, Inc., conveyed the Phase One development back to the Slobans early in 1973. As a result, the easement created for the Phase One residents was extinguished by merger of title. Later that year, the Slobans sold the Phase Two development to Lake Front Apartments and created another easement to allow Phase One residents access to the lake.[2]

Square Lake Hills Associates bought Phase One seven years later. They converted the apartments into condominiums, erected a small boat dock off of its easement, and advertised the units as affording lake-access rights for year-round recreation.

Meanwhile, Bloomfield Township responded to a call for inland lake regulation in 1974 by adopting ordinance no. 278. This ordinance restricted the use of inland lakes to owners or occupants of riparian parcels.[3] In 1981, the township repealed

[1] More recently, Phase Two, the lake-side multifamily unit complex, was converted to condominium use. The seventy-eight condominium unit owners in Phase Two, who also claim access to Square Lake, are not parties to this case.

[2] The easement runs perpendicular to the lake shore and extends approximately 250 feet onto the lake bed. A private drive and a cement boat-launch ramp over the Phase Two property allows access to the easement area for Phase One residents. The legal description in the land contract, the master deed, the site plan, and the recorded warranty deed executed on March 31, 1981, all include the easement for lake access with the same metes and bounds as the original lake access easement created in 1968.

[3] The record indicates that the ordinance was never enforced against the residents of the Phase One or Phase Two developments.

ordinance no. 278. In its place, it adopted ordinance no. 340[4] which required nonriparian owners who used the township's inland lakes to obtain prior approval from the Township Zoning Board of Appeals.

In 1984, Bloomfield Township sued the current and former owners of the Phase Two development directing them to comply with ordinance no. 340 and prohibiting Phase One residents access to the beach-front easement area.[5] While the lawsuit was pending, the Bloomfield Township Board of Supervisors proposed ordinance no. 397.[6] This ordinance limited township riparian property owners, with a minimum of 150 feet of lake frontage, to launching and docking one motorboat. Plaintiff's representative and the riparian property owners of Square Lake appeared at the township board meeting on April 13, 1987, to discuss the proposal.[7] After a lengthy hearing, the township board unanimously voted to approve the ordinance.

Soon thereafter, plaintiff filed the instant lawsuit challenging ordinance nos. 340 and 397. Bloomfield Township, questioning the substantive grounds of plaintiff's complaint, responded with a motion for summary disposition. Plaintiff cross motioned for partial summary disposition on the basis of *Fox & Associates, Inc v Hayes Twp*, 162 Mich App 647; 413 NW2d 465 (1987), which held that townships do not have authority under the Township Rural Zoning Act to enact ordinances restricting boat docking or funnel development.

[4] The validity of ordinance no. 340 is not before the Court at this time. See Bloomfield Township ordinance no. 340 (Appendix A, p 328).

[5] The suit was dismissed on June 1, 1987, by stipulation of the parties.

[6] See Bloomfield Township ordinance no. 397 (Appendix B, p 330).

[7] The record indicates that single-family owners of Square Lake favored adoption of the ordinance, while plaintiff's association opposed it.

Judge Norman L. Lippitt heard both motions and concluded that *Fox & Associates* prohibited Bloomfield Township from regulating Square Lake under both the Township Rural Zoning Act and the township ordinance act.

In appealing Judge Lippitt's decision, Bloomfield Township additionally sought an order from this Court to consolidate with *Fox & Associates*.[8] We denied Bloomfield Township's motion to consolidate because we were not persuaded the questions presented by the township should be reviewed by this Court before consideration by the Court of Appeals.[9]

The Court of Appeals subsequently affirmed the trial court, premising its decision on *Fox & Associates*. After its motion for reconsideration was denied, Bloomfield Township applied for leave to appeal in this Court. We granted the township's motion, limiting review to the following issues:[10]

(1) Whether the delegation of powers in the township ordinance act allows Bloomfield Township to regulate by ordinance boat launching and boat docking; and

(2) Whether the Township Rural Zoning Act allows Bloomfield Township to regulate by ordinance boat launching and boat docking.[11]

---

[8] We granted leave to appeal in *Fox & Associates* to determine whether a township has the authority to enact zoning ordinances to limit boat docking and funnel development by riparian owners under the Township Rural Zoning Act. *Fox & Associates* was briefed and argued before this Court on January 5, 1989. However, we vacated our order granting leave to appeal in light of a proposed consent judgment agreed to by the parties, and because we were no longer persuaded that we should review the question presented. 432 Mich 932 (1989).

[9] Order of the Supreme Court, entered September 7, 1988 (Docket No. 83704).

[10] 435 Mich 862 (1990).

[11] We elect not to address the Township Rural Zoning Act because Bloomfield Township failed to adopt ordinance no. 397 within the

II

Under the separation of powers doctrine,[12] township regulations enacted under the township ordinance act are not subject to judicial intervention absent abuse of discretion, excessive use of power, or error of law. *Tireman-Joy-Chicago Improvement Ass'n v Chernick,* 361 Mich 211; 105 NW2d 57 (1960); *Sheffield Development Co v City of Troy,* 99 Mich App 527, 530; 298 NW2d 23 (1980). When asked to review a township ordinance, we will not substitute our judgment for that of a township official. Rather, we heed the advice of Justice TALBOT SMITH in *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 431; 86 NW2d 166 (1957):

> The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: *It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises.* [Emphasis added.]

As the majority in *Brae Burn* held, our function is to determine whether a township ordinance is within the range of conferred discretionary powers and then determine if it is reasonable. *Id.* at 437. See also *People v Gibbs,* 186 Mich 127, 133; 152 NW 1053 (1915); *1426 Woodward Ave Corp v Wolff,* 312 Mich 352, 371; 20 NW2d 217 (1945); *State, County & Municipal Employees Local 339 v*

procedural requirements imposed by the act. *Krajenke Buick Sales v Hamtramck City Engineer,* 322 Mich 250, 255; 33 NW2d 781 (1948).

[12] Const 1963, art 3, § 2.

*Highland Park,* 363 Mich 79, 86; 108 NW2d 898
(1961). The reasonableness of an ordinance, while
a question of law, depends upon the particular
facts of each case. *Id.* The test for determining
whether an ordinance is reasonable requires us to
assess the existence of a rational relationship be-
tween the exercise of police power[13] and the public
health, safety, morals, or general welfare in a
particular manner in a given case. *People v Arm-
strong,* 73 Mich 288, 292; 41 NW 275 (1889); *People
v Gibbs, supra; Alderton v City of Saginaw,* 367
Mich 28, 33; 116 NW2d 53 (1962); *Delta Charter
Twp v Dinolfo,* 419 Mich 253, 271; 351 NW2d 831
(1984).[14]

---

[13] We have held that the term police power, by its very nature, is
incapable of precise definition inasmuch as it varies with the indepen-
dent circumstances of each diverse community within the state.
*People v Sell,* 310 Mich 305, 315-316; 17 NW2d 193 (1945). It does,
however, lend itself to description.

"The [term] 'police power' is said to be a power or organiza-
tion of a system of regulations tending to the health, order,
convenience, and comfort of the people and to the prevention
and punishment of injuries and offenses to the public. It is the
expression of an instinct of self-preservation and characteristic
of every living creature, an inherent faculty and function of
life, attributed to all self-governing bodies as indispensable to
their healthy existence and to the public welfare. It embraces
all rules and regulations for the protection of life and the
security of property. 28 Cyc, p 692; 31 Cyc, p 902. It has for its
object the improvement of social and economic conditions af-
fecting the community at large and collectively with a view to
bring about 'the greatest good of the greatest number.' Courts
have consistently and wisely declined to set any fixed limita-
tions upon subjects calling for the exercise of this power. It is
elastic and is exercised from time to time as varying social
conditions demand correction." [See *People v Brazee,* 183 Mich
259, 262; 149 NW 1053 (1914), aff'd 241 US 340; 36 S Ct 561; 60
L Ed 1034 (1915).]

See also *Cady v Detroit,* 289 Mich 499, 514; 286 NW 805 (1939), cert
den 309 US 620 (1939).

[14] We caution reviewing courts to carefully exercise this power.
When an ordinance purports to be, and is obviously enacted, in the
interest of the public health, safety, and welfare, it is presumed valid.
*Kirk v Tyrone Twp,* 398 Mich 429, 439; 247 NW2d 848 (1976). It may

At common law, we narrowly construed township ordinances enacted pursuant to the delegated police power in the township ordinance act. *Harding v Bader,* 75 Mich 316, 319; 42 NW 942 (1889); *Clements v McCabe,* 210 Mich 207, 219; 177 NW 722 (1920). The delegates to the 1961 Michigan Constitutional Convention replaced the commonlaw rule of strict construction by constitutionally requiring courts to liberally construe all legislative and constitutional powers conferred upon townships. Const 1963, art 7, § 34; see also, 1 Official Record, Constitutional Convention 1961, pp 1048-1058. While this constitutional directive does not provide an independent grant of authority for townships to act in a particular area, its mandate of liberal construction does provide a framework for analysis of Bloomfield Township's arguments.[15] See *Arrowhead Development Co v Livingston Co Road Comm,* 413 Mich 505, 511; 322 NW2d 702 (1982); *Eyde Construction Co v Meridian Twp,* 149 Mich App 802, 807; 386 NW2d 687 (1986).

A

Plaintiff first[16] argues that Bloomfield Township acted beyond the delegated police powers in the

be declared invalid only when it plainly appears that it does not tend, in any applicable degree, to promote those ends and the power to legislate has been exercised arbitrarily.

[15] Const 1963, art 7, § 34 provides:

The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.

[16] Plaintiff also argued that the subject matter of Bloomfield Township's zoning ordinance is preëmpted by the Inland Lakes and Streams Act, MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.* and the Marine Safety Act, MCL 281.1012 *et seq.*; MSA 18.1287(1) *et seq.* However, we granted leave to appeal on a very narrow issue: whether

township ordinance act when it limited the use of its easement by controlling the number of boats docked and launched on Square Lake.

Central to plaintiff's analysis is the 1989 amendment of the township ordinance act which now provides in part:

> The township board of a township may, at a regular or special meeting by a majority of the members elect of the township board, adopt ordinances regulating the public health, safety, and general welfare of persons and property, *including, but not limited to* fire protection, licensing or use of bicycles, traffic and parking of vehicles . . . . [MCL 41.181; MSA 5.45(1). Emphasis added.]

Thus, plaintiff maintains the Legislature did not intend for townships to have an unlimited amount of regulatory power under the township ordinance act. Moreover, plaintiff maintains the Legislature intended to restrict the authority of townships to act in situations where it expressly authorized township control.[17]

However, plaintiff's argument fails to consider that in 1959 the Legislature amended the township ordinance act to include the authority to "adopt ordinances" regulating the "public health, safety, and general welfare of persons and property." We view this amendatory action as evidencing the Legislature's intent to broaden the township powers. Thirty years later, the Legislature

a township has the authority to regulate boat docking and launching under the township ordinance act or the Township Rural Zoning Act. Therefore, we deem it unnecessary to consider the preëmption argument and decline to do so.

[17] Plaintiff believes that the delegated functions under township control include the adoption of fire codes (MCL 125.1508; MSA 5.2949[8]), junk yard regulations (MCL 445.451; MSA 19.731), or public recreation areas (MCL 123.51; MSA 5.2421), but does not include regulating boat launching and docking.

added the words "including, but not limited to" to indicate that the areas of regulation were not confined to those expressly mentioned in the statute. The 1989 amendment adds nothing new to powers granted to townships in the township ordinance act. Rather, it reaffirms the Legislature's intent that townships have the authority to resolve local matters.

We find *Miller v Fabius Twp Bd*, 366 Mich 250, 253; 114 NW2d 205 (1962), supportive of our interpretation of the township ordinance act. The *Miller* Court examined the police power language of the township ordinance act in light of a township ordinance limiting the hours of water-skiing and powerboat racing on an inland lake. In holding that Fabius Township had the authority to enact its water-skiing ordinance on the basis of the police power language in the township ordinance act, the court weighed the benefits of township control of inland lakes.

> While the general problem with reference to water skiing and motorboating and the use of our inland lakes by different classes of sportsmen are State-wide problems, there are peculiar circumstances that are local in character—*such as the number of boat users on the lake; the amount of fishing on the lake; the congestion and conflict between fishermen and water skiers; the location of the lake to densely populated areas*—which the 1959 amendment authorizes townships to deal with under the "health and safety of persons and property" clause. [*Miller v Fabius Twp Bd, supra* at 259. Emphasis added.]

Similarly, in *Checker Cab Co v Romulus Twp*, 371 Mich 232; 123 NW2d 772 (1963), the plaintiffs challenged a Romulus Township ordinance that required taxicab drivers working at Metropolitan

Airport to obtain local licenses. The Court sustained the township regulation under the township ordinance act as a legitimate use of its police power because the taxicab business affected the health and safety of motorists, pedestrians, and other persons and property within the township.

We find the reasoning in *Miller* and *Checker Cab* particularly instructive in answering the question presented in this appeal. When the Legislature added the language to the township ordinance act giving townships the ability to "adopt ordinances regulating the public health, safety and general welfare of persons and property," it provided a statutory mechanism for townships to adopt and enforce regulations, purely local in nature, to enhance the health and safety within its community. *Miller v Fabius Twp Bd, supra* at 259. The regulation of boat docking and launching by Bloomfield Township on inland lakes is a perfectly reasonable use of township police power.[18]

---

[18] Our review of Michigan case law evidences numerous instances in which we have upheld township ordinances regulating a broad range of activities, all of which were enacted to protect the health, safety, and welfare of persons and property within the townships. In *Belanger v Chesterfield Twp,* 96 Mich App 539, 541-542; 293 NW2d 622 (1980), rev'd on other grounds 409 Mich 941 (1980), a township parking ordinance was reviewed. In *Casco Twp v Brame Trucking Co, Inc,* 34 Mich App 466; 191 NW2d 506 (1971), a soil removal ordinance was reviewed. In *Suits v Meridian Charter Twp,* 60 Mich App 347; 230 NW2d 426 (1975), an ordinance regulating the public display of sexually explicit material was reviewed. In *People v Yeo,* 103 Mich App 418; 302 NW2d 883 (1981), cert den 457 US 1134 (1982), reh den 458 US 1132 (1982), a dog-kennel licensing ordinance was reviewed.

This is not to suggest that township ordinances will always be upheld under the reasonable relationship standard. We have invalidated numerous township ordinances when they act as an unwarranted exercise of police power. See *Frischkorn Construction Co v Redford Twp Building Inspector,* 315 Mich 556; 24 NW2d 209 (1946) (ordinance requiring a minimum amount of usable floor space in residential homes); *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389; 53 NW2d 308 (1952) (exclusion of church and schools from a residential neighborhood); *Smith v Plymouth Twp Building Inspector,* 346 Mich 57; 77 NW2d 332 (1956) (exclusion of trailer parks from a township); *Johnson Construction Co*

Furthermore, we cannot agree with plaintiff's conclusion that ordinance no. 397 is a zoning ordinance because it limits the use of lake frontage based on the number of feet of lake frontage owned. Bloomfield Township ordinance no. 397 is *not* a zoning ordinance. The ordinance does *not* regulate the use of land or lake frontage. Rather, it regulates an "activity" by limiting the number of boats that can be parked or "launched and/or docked adjacent to each separate frontage."

A zoning ordinance is defined as an ordinance which regulates the use of land and buildings according to districts, areas, or locations. 8 McQuillin, Municipal Corporations, § 25.53, p 137. The question whether or not a particular ordinance is a zoning ordinance may be determined by a consideration of the substance of its provisions and terms, and its relation to the general plan of zoning in the city.[19] *Id.*

---

*v White Lake Twp,* 351 Mich 374; 88 NW2d 426 (1958) (building ordinance requiring certain types of materials to be used).

[19] The dissent relies on *Bane v Pontiac Twp,* 343 Mich 481, 492; 72 NW2d 134 (1955), to support its position that ordinance no. 397 has the effect of zoning. *Post,* pp 338-339. In *Bane,* Pontiac Township adopted an ordinance, pursuant to the township building regulation enabling statute, 1943 PA 185, that required running water in dwellings, indoor plumbing, and adopted a definition of substandard dwellings as defined in the state housing law. *Id.* at 485. Residents of Pontiac Township who lived without running water and indoor plumbing sought a declaratory judgment from the court to prevent the township from enforcing the ordinance against them. The *Bane* Court held the township had the authority to enact the regulation, but could not enforce it retroactively against the petitioners. The Court did not hold, as the dissent suggests, that the township regulation had the effect of zoning and could not be enforced against them. Rather, the Court expanded the principle of nonconforming use, retroactivity in zoning, and the use of declaratory judgments. The dissent's reliance on the words "ha[ve] 'the effect of zoning,'" can only be viewed as dicta and not controlling authority for this case. *Post,* p 334.

Moreover, *Bane* has never been interpreted by this Court or the Court of Appeals in the manner suggested by the dissent. The Michigan appellate courts use *Bane* as precedent in cases dealing with declaratory judgments, *Henry v Henry,* 362 Mich 85, 90; 106 NW2d 570 (1960); *Sterling Secret Service, Inc v State Police,* 20 Mich App

We find plaintiff's argument analogous to the argument made in *Recreational Vehicle United Citizens Ass'n v City of Sterling Heights,* 165 Mich App 130; 418 NW2d 702 (1987). In that case, the plaintiffs challenged a local regulation which restricted the parking and storage of recreational vehicles, enclosed campers, boats, snowmobiles, and utility trailers upon public and private property in a single-family residential area. The plaintiffs claimed the ordinance was not a regulation, but rather a "zoning ordinance" because it limited the use of their property, and invalid because the city did not follow the procedural guidelines in the Township Rural Zoning Act.

The Court of Appeals held that defendant's ordinance was in fact a zoning ordinance because it regulated the storage and parking of plaintiffs' vehicles without reference to a public street or sidewalk. However, relying on an earlier decision, *Belanger v Chesterfield Twp,* 96 Mich App 539, 541; 293 NW2d 622 (1980), rev'd on other grounds 409 Mich 941 (1980), the Court held that where a local ordinance regulates the parking of vehicles on its streets or sidewalks, the ordinance is regulatory. *Recreational Vehicle United Citizens Ass'n v Sterling Heights, supra* at 136.

Launching and docking boats on inland lakes are "activities," and the number of boats that can be launched or docked is very much akin to a

502, 512; 174 NW2d 298 (1969); *Kalamazoo Police Supervisors' Ass'n v Kalamazoo,* 130 Mich App 513, 518; 343 NW2d 601 (1983); *Recall Blanchard Comm v Secretary of State,* 146 Mich App 117, 121; 380 NW2d 71 (1985), and the principle of nonretroactivity of zoning ordinances, *Farmington Twp v Scott,* 374 Mich 536, 540; 132 NW2d 607 (1965); *Detroit Edison v City of Wixom,* 382 Mich 673, 690; 172 NW2d 382 (1969) (T. M. KAVANAGH, J., concurring); *Walsh v River Rouge,* 385 Mich 623, 638; 189 NW2d 318 (1971); *People v Llewellyn,* 401 Mich 314; 257 NW2d 902 (1977); *Bruggeman v Minster,* 42 Mich App 177, 179; 201 NW2d 344 (1972); *Palmer v Superior Twp,* 60 Mich App 664, 679; 233 NW2d 14 (1975); 96 ALR2d 241, § 5a, 260, § 14; 79 ALR3d 731, § 6b, 735, § 8b.

parking regulation on a residential street. It follows that since township parking regulations on residential streets are within the scope of a township's regulatory police power, *Belanger v Chesterfield Twp, supra* at 541, a township regulation of docking and launching boats on its inland lake is within the same scope of regulatory police power.

We therefore conclude that townships have the authority, under the township ordinance act, to enact ordinances regulating boat docking and launching on inland lakes as a measure to protect the public health, safety, and welfare of persons and property within a township.

B

Plaintiff also argues that even if Bloomfield Township has the authority to regulate boat docking and launching through the township ordinance act, ordinance no. 397 is an unreasonable use of police power.[20] We disagree.

The township board determined that lack of regulation resulted in (1) a nuisance condition, (2) an impairment of important and irreplaceable natural resources, (3) the destruction of property values, and (4) a threatening of the public health, safety, and welfare. We conclude that each of the concerns raised by the township is reasonable and addresses a legitimate governmental interest.

The problems inherent in overcrowded lakes, pollution, and destruction of wildlife are shared by cities, townships, and villages throughout the state. The 1961 Constitutional Convention delegates recognized this concern by establishing a constitutional directive to protect the state's wa-

[20] The validity of ordinance no. 340 is not before the Court at this time.

ters from pollution, impairment, and destruction.[21] Const 1963, art 4, § 52; see also, 2 Official Record, Constitutional Convention 1961, pp 2602-2612. In *Thompson v Enz*, 379 Mich 667, 699; 154 NW2d 473 (1967), Justice BRENNAN, in his dissenting opinion, urged the Legislature to address the problem of preserving Michigan's lakes by enacting

> wise and forethinking legislation, which will protect our lakes from overcrowding, and the pollution which flows from immoderate use, so that all of the people of the State, including riparian cottage owners, will be able to enjoy our great natural bounty for centuries to come.

The Legislature responded by enacting the Inland Lakes and Streams Act, Marine Safety Act, and the Wetland Protection Act, MCL 281.701; MSA 18.595(51). Under these acts, the Department of Natural Resources may choose which lakes, rivers and streams it wishes to regulate.[22] Accordingly, local governments are left to regulate waterways not managed by the Department of Natural Resources. MCL 281.708(4); MSA 18.595(58)(4), MCL 281.904; MSA 11.419(4), MCL 281.1015; MSA 18.1287(15).

In the instant case, Bloomfield Township determined that it was necessary to regulate boat usage in order to preserve and protect the health, safety, and welfare of persons using and living near the

[21] The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety, and general welfare of the people. The Legislature is to provide for the protection of the air, water, and other natural resources of the state from pollution, impairment, and destruction. Const 1963, art 4, § 52.

[22] Michigan has more than 3,000 miles of Great Lake coastline encompassing 38,575 square miles of water, over 11,000 inland lakes, and more than 36,350 miles of inland rivers and streams. Theut & Davis, *Michigan's Marine Safety Act,* 66 Mich B J 882 (1987). The Legislature must have realized that the Department of Natural Resources has neither the manpower nor the money to properly regulate the state waterways.

inland lakes. The township found that lack of
regulation resulted in a nuisance condition, an
impairment of important and irreplaceable natu-
ral resources, the destruction of property values,
and a threatening of the public health, safety, and
welfare. Furthermore, the township recognized
that if proper safety precautions were not immedi-
ately taken, the use of boats on inland lakes could
be very dangerous to the persons and riparian
property owners using the lake. In our view,
Bloomfield Township took reasonable steps to al-
leviate future problems by recognizing this poten-
tial hazard.

Accordingly, we conclude that the objective
sought to be achieved by the ordinance, in requir-
ing a minimal amount of lake frontage for boat
dockage through a uniform scheme of regulation
to lessen the congestion and density of boats
docked and launched around Square Lake, is a
reasonable use of the township police power under
the township ordinance act.

### CONCLUSION

In the instant case, we granted leave to appeal
to determine whether townships have the author-
ity to regulate by ordinance boat launching and
docking. We conclude that the delegated police
power authority in the township ordinance act
enables townships to regulate docking and launch-
ing boats for the protection of the health, safety,
and welfare of persons and property within their
communities.

Accordingly, the decision of the Court of Appeals
is reversed, and we remand this case to Oakland
Circuit Court for entry of an order pursuant to
this opinion.

BRICKLEY and GRIFFIN, JJ., concurred with RI-
LEY, J.

APPENDIX A

BLOOMFIELD TOWNSHIP
ORDINANCE NO. 340

AN ORDINANCE TO AMEND ORDINANCE NO. 265
KNOWN AS THE ZONING ORDINANCE.

THE TOWNSHIP OF BLOOMFIELD ORDAINS

Section 1.01. That Ordinance No 265, known as the Zoning Ordinance is amended by revising or changing Article XV, Sec 1508, Performance Standards, Subsection 10 Residential Waterfront Use, to read as follows

(Repeals Ordinance No 278)

Revise or change Article XV, Sec 1508, Performance Standards, Subsection 10 Residential Waterfront Use

10. RESIDENTIAL WATERFRONT USE

The use of waters shall be restricted to that right of user enjoyed by virtue of riparian rights and shall be confined to reasonable use by the owner or occupant of a riparian parcel which is contiguous to the water as of the effective date of this ordinance, provided, however, that if a riparian parcel is proposed to be used by persons other than the owner residing thereon or occupant residing thereon, for a park, beach, picnic area or similar area for outdoor recreation, then in such event said use may be made of said riparian parcel only when permitted by the Zoning Board of Appeals, provided such use does not impair the natural appearance of said land or overcrowd the parcel or lake surface or tend to produce unreasonable noise or annoyance to surrounding properties, and provided that no use shall be made of any land or water for boat liveries or public or com-

mercial beaches or recreational use operated for profit.

Where a plan for subdividing a parcel of land contiguous to a body of water is granted tentative approval by the Township, a recreational park bordering on said body of water may be dedicated for such purpose, the privileges of which and riparian rights of user incident thereto, are to be reasonably enjoyed by the owners and occupants of lots included in any plat or plats recorded within said parcel and only such owners and occupants, provided that said recreational park is dedicated at the time of recording the first plat in said parcel, and provided that where such a recreational park is dedicated for the use of owners and occupants of lots contained in such a recorded plat or plats, at least twenty (20) lineal feet of water frontage and fifty (50) feet in depth to waters edge as platted shall be reserved in upland for the rights of each lot of the size required by this Ordinance and which it is intended shall enjoy water rights, and provided further that in no event shall any plat not in conformity with the provisions of this Ordinance create any riparian rights in parcels of land so platted and such a nonconforming plat will not be approved for recording.

Ordinance No 278 is hereby repealed

Section 2.01. The provisions of this Ordinance are hereby given immediate effect pursuant to the provisions of Section 11 and Section 14 of Act 184 of the Public Acts of 1943 as amended.

The ordinance was adopted by the township board on November 9, 1981, as verified by Deloris V. Little, Township Clerk.

APPENDIX B

BLOOMFIELD TOWNSHIP
ORDINANCE NO. 397

THE TOWNSHIP OF BLOOMFIELD ORDAINS:

ARTICLE I. Intent, Purpose and Short Title:

Section 1.1. Intent and Purpose: In its delibera-
tions leading to the adoption of this Ordinance, the
Township Board has recognized and concluded
that the use of water resources, including the
inland lakes situated in the Township, should be
considered within a framework of long-term costs
and benefits to the Township, and that it is desir-
able to retain and maintain the physical, cultural
and aesthetic characteristics of lakes in the Town-
ship. Moreover, it has been recognized that, as the
shore lines of lakes become further developed, the
cumulative impact of boat usage from each respec-
tive property must be regulated in order to pre-
serve and protect the rights of riparian owners as
well as the Township as a whole. It has further
been recognized that the lack of regulation shall
result in a nuisance condition and an impairment
of these important and irreplaceable natural re-
sources of the Township, and shall further result
in the destruction of property values and threaten
the public health, safety and welfare of all persons
making use of lakes within the Township and
properties adjacent to lakes in the Township. Ac-
cordingly, it is the intent and purpose of the
Township Board to adopt reasonable regulations
for boat usage in the Township.

Section 1.2. Short Title: This Ordinance shall be
known and may be cited and referred to as the
Bloomfield Township Boat Regulation Ordinance,
and shall hereinafter be referred to as "this Ordi-
nance."

ARTICLE II. Scope and Application.

Section 2.1. The terms and provisions of this Ordinance shall be interpreted and applied as minimum standards and requirements for the promotion and protection of the public health, safety and welfare, and for the public peace and preservation of natural resources and public and private property within the Township.

Section 2.2. This Ordinance shall not interfere with, abrogate, annul nor appeal any other law, ordinance, rule or regulation previously in effect, including any other ordinance regulating boat launching and/or usage. Moreover, in instances where this Ordinance specifically imposes a greater restriction or higher standard than other ordinances, the provisions of this Ordinance shall govern.

Section 2.3. This [O]rdinance is not intended to conflict with and/or pre-empt application of the Inland Lakes and Streams Act, but intended to supplement such Act in a compatible manner so as to enhance water usage in a manner consistent with the public interest.

ARTICLE III. Definitions.

Section 3.1. For the purpose of construction and application of this Ordinance, the following definitions shall apply:

(a) "Boat" shall mean a water craft having a motor or engine of more than five [horse]power.

(b) "Dock" or "docking" shall mean the mooring of a boat directly to a pier, which is a platform or other permanent or seasonal fixture extending from the shore, and directly accessible to a separate frontage; and shall also mean the regular anchoring of a boat adjacent to a separate frontage.

(c) "Lake" shall mean a navigable body of water situated, wholly within the Township, but shall not mean nor include lakes to which other ordinance regulations apply so as to prohibit certain boats with engines or motors.

(d) "Person" shall mean a human being, partnership, corporation, association, including a condominium association, and any other entity to which the law provides or imposes rights or responsibilities.

(e) "Separate Frontage" means that portion of a lot or parcel of land existing on documentation recorded within the Oakland County Register of Deeds, which abuts or intersects with the normal high water mark of a lake, whether such lot or parcel is owned by one or more persons, or commonly owned by several persons, or combinations of persons.

ARTICLE IV. Regulations.

Section 4.1. Subject to the provisions below, not more than one boat shall be launched and/or docked adjacent to each separate frontage.

Section 4.2. If the continuous length of a separate frontage is greater than 150 feet, one additional boat may be launched and/or docked for each 100 feet of continuous frontage in excess of the initial 150 feet. For the purpose of computing the length of frontage, the measurement shall be along the water's edge at the normal high water mark of the lake as determined by the Department of Natural Resources, or if the Department has not made such a finding, the normal high water mark location shall be determined in the [discretion] of the Township. Moreover, the measurement shall be made only along a natural shoreline, and shall not include any man-made[ ] channel, lagoon, canal or the like.

Section 4.3. Following the effective date of this Ordinance, no launching and/or docking shall be permitted with respect to a separate frontage of less than 100 feet, provided, this provision shall not apply to lots or parcels constituting a building site of record prior to the effective date of this Ordinance.

ARTICLE V. Penalties.

Section 5.1. Any person who shall be convicted of a violation of the regulations contained in this Ordinance shall be guilty of a misdemeanor and shall be punished by imprisonment of not more than 90 days or by fine of not more than $500.00, or both such imprisonment or fine, as determined by a Court of competent jurisdiction.

Section 5.2. In addition to, or in lieu of, seeking to enforce this Ordinance by proceeding under Section 5.1, above, the Township may institute an appropriate action in a Court of general jurisdiction seeking equitable relief.

ARTICLE VI. Severability.

Section 6.1. In the event that any one or more sections, provisions, phrases or words of this Ordinance shall be found to be invalid by a Court of competent jurisdiction, such holding shall not affect the validity nor the enforceability of the remaining sections, provisions, phrases or words of this Ordinance unless expressly so determined by the Court.

ARTICLE VII. Nonexclusivity.

Section 7.1. The prohibitions and penalties provided for in this Ordinance shall be in addition to, and not exclusive of, other prohibitions and penalties provided for by other law, ordinance, rule and/or regulation.

ARTICLE VIII. Adoption.

Section 8.1. Provision of this Ordinance shall take effect thirty (30) days from the date of publication in accordance with the Statutes of the State of Michigan.

The ordinance was unanimously adopted by the township board on April 13, 1987 as verified by Wilma S. Cotton, Township Clerk.

BOYLE, J. (*concurring*). I agree with Justice RILEY that Bloomfield Township has authority under the township ordinance act, MCL 41.181; MSA 5.45(1), to define the level of motorboat activity on its inland lakes by limiting the activity in relation to the amount of lake frontage held by riparian owners. *Miller v Fabius Twp Bd,* 366 Mich 250; 114 NW2d 205 (1962).

LEVIN, J. (*dissenting*). Bloomfield Township ordinance no. 397 regulates docking and launching of motorboats on the basis of the number of feet of lake frontage "owned" or "commonly owned."[1] The purpose, intent, and effect of the ordinance is to limit or bar altogether the use of lake frontage owned or commonly owned by "back-lot" owners, and has "the effect of zoning."[2] Such a regulation of docking and launching is an exercise of the zoning component of the police power, and is not a valid exercise of police power delegated by the Legislature to a local unit of government under a law, such as the township ordinance act,[3] generally delegating police power.

### A

Under well-established authority, see part II,

—a zoning regulation may not be enacted by a local unit of government under a general delegation of the police power, such as the township ordinance act;

—a zoning regulation may be enacted by a local unit of government only when the Legislature has delegated specifically to the local unit of government the power to enact the zoning regulation,

[1] Bloomfield Township ordinance no. 397, art III, § 3.1(e).

[2] *Bane v Pontiac Twp,* 343 Mich 481, 492; 72 NW2d 134 (1955).

[3] MCL 41.181; MSA 5.45(1).

which is ordinarily done by enactment of a zoning enabling act such as the Township Rural Zoning Act.[4]

A zoning regulation or ordinance, we all agree, must be enacted in accordance with the provisions of a zoning enabling act, and is invalid unless enacted in strict compliance with the procedures prescribed by law for the enactment of a zoning regulation or ordinance.[5]

Bloomfield Township acknowledges that ordinance no. 397 was not enacted in accordance with the provisions of the TRZA.

Since this ordinance is a zoning regulation, not enacted in accordance with the procedural requirements of the TRZA, and a zoning regulation may not be preserved as an enactment in the exercise of the general police power, this ordinance is not valid.

B

I agree with the majority that "townships have the authority to regulate boat docking and launching for the protection of the health, safety, and welfare of persons and property within their communities under the township ordinance act."[6] A township could, accordingly, appropriately enact, under the township ordinance act, a regulation barring the docking of motorboats in an unsafe or hazardous manner, or the launching of motorboats during usual sleeping hours.[7]

The asserted "health, safety, welfare, property" justification for the enactment of the instant ordi-

---

[4] MCL 125.271; MSA 5.2963(1).

[5] *Ante,* p 316, n 11.

See *Korash v Livonia,* 388 Mich 737, 746; 202 NW2d 803 (1972), quoted in text following n 22.

[6] *Ante,* p 313.

[7] See *Miller v Fabius Twp Bd,* 366 Mich 250; 114 NW2d 205 (1962).

nance is, however, essentially fictitious. The ordinance does not, in practical effect, regulate docking or launching of motorboats by a person owning land abutting Square Lake, who may dock, launch and operate a motorboat, insofar as this regulation by the township is concerned, of any size, at any hour, and without regard to any hazard or annoyance involved.

The ordinance, in practical effect, regulates only the docking and launching of a motorboat by a "back-lot" owner, a person whose home has not been constructed on land fronting on Square Lake, but who has an undivided interest, together with others, in an out-lot, set aside for recreational purposes, fronting on Square Lake.

This ordinance exemplifies

> [t]he majestic egalitarianism of the law, which forbids rich and poor alike to sleep under bridges, to beg in the streets, and to steal bread. [Anatole France, *Le Lys Rouge* (1894), ch 7.]

C

If relatively small Square Lake cannot accommodate all the motorboats that all persons having a riparian or littoral right of access to Square Lake might launch, the township might, by ordinance adopted under the township ordinance act, allocate the motorboat use of the lake in a manner that recognizes the rights of all persons, back-lot owners as well as front-lot owners, having such a vested property right to the motorboat use of Square Lake.

It appears that the plaintiff condominium association seeks no more than to continue to dock and launch no more than seven motorboats. If the real

reason[8] for the enactment of this ordinance was that Square Lake is overcrowded, the hours of use could be allocated in a manner that recognizes the preëxisting rights of all users who, apart from such a governmental regulation, would, as a matter of common law,[9] be required to exercise their rights in a manner that recognizes that others with a like riparian or littoral right have an equal right to such use.

The majority does not predicate the validity of the ordinance on the dangers and noise associated with motorboats. Under the majority's analysis, the township could as easily bar back-lot owners from exercising their riparian and littoral rights of access to Square Lake for the launching of canoes, rowboats, sailboats, kayaks, rubber rafts, inner tubes, swimming or fishing.[10]

D

The failure to enact ordinance no. 397, a zoning ordinance, in accordance with the procedural requirements of the TRZA is not "harmless error"—

---

[8] Because the plaintiff condominium association prevailed both at the trial court and Court of Appeals levels, it has not had occasion to develop the record evidence tending to show that the real reason for the adoption of the ordinance is not overcrowding of the lake, but rather to restrict further development of the back land.

[9]  [A]ll the riparian proprietors have an equal or common right to use the water, but each must exercise his rights in a reasonable manner and to a reasonable extent, so as not to interfere unnecessarily with the corresponding rights of others. [23 Michigan Law & Practice, Waters and Watercourses, § 2, p 262.]

[10] See n 22 concerning Bloomfield Township ordinance no. 340 requiring "nonriparian owners" to obtain prior approval from the Township *Zoning* Board of Appeals before making any use of inland lakes.

See also n 23 concerning the Hayes Township ordinance which limited access—in Hayes Township—to Lake Charlevoix to one *living unit* for each 100 feet of lake frontage.

often the first and "last resort" of a court per-
suaded that a particular exercise of state power or
trial court result should be sustained although
procedures prescribed by law have not been ob-
served.

The Legislature has, when delegating the zoning
power,[11] consistently required that a use extant at
the time of enactment of a zoning regulation be
permitted to be continued as a nonconforming
use.[12]

The members of the plaintiff condominium asso-
ciation had, before enactment of this ordinance,
been docking and launching up to seven motor-
boats on or from the 160-foot out-lot parcel front-
ing on the lake. The ordinance is invalid as ap-
plied to the plaintiff condominium association at
least to the extent it does not permit the condo-
minium association to continue the nonconforming
use.

The majority distinguishes *Bane v Pontiac Twp*,
343 Mich 481; 72 NW2d 134 (1955), on the basis
that there "the Court expanded the principle of
nonconforming use, retroactivity in zoning"[13] to
provide relief to the plaintiffs, but does not provide
*Bane* relief to the condominium association al-

---

[11] MCL 125.286; MSA 5.2963(16), township zoning; MCL 125.216;
MSA 5.2961(16), county zoning; MCL 125.583a; MSA 5.2933(1), village
zoning.

[12] In an action based upon a prior nonconforming use the
reasonableness of the zoning amendment is not in issue. A
prior nonconforming use is a vested right to continue the
lawful use of real estate in the manner it was used prior to the
adoption of a zoning ordinance. Though the ordinance be
reasonable, it cannot operate to oust the property owner of his
vested right. [*Dusdal v City of Warren*, 387 Mich 354, 359-360;
196 NW2d 778 (1972).]

[13] *Ante*, p 323, n 19.

though the nonconforming use issue has been briefed and argued.[14]

E

Until *Fox & Associates, Inc v Hayes Twp,* 162 Mich App 647; 413 NW2d 465 (1987), was decided, Bloomfield Township contended—see part III—that ordinance no. 397 *was a zoning ordinance.* This Court granted leave to appeal in this case primarily to consider whether *Fox & Associates* was correctly decided, but is unable to reach that issue because ordinance no. 397 was not adopted in accordance with the procedural requirements of the TRZA. The Hayes Township *zoning* ordinance at issue in *Fox & Associates,* much like ordinance no. 397, prohibited more than one "mooring, slip or dock space for each" 100 feet of lake frontage.

In *Hess v West Bloomfield Twp,* Michigan Supreme Court, Docket No. 91240, the trial court granted partial summary disposition in favor of the plaintiff back-lot owners on the authority of *Fox & Associates,* and the Court of Appeals denied leave to appeal. The provision of the West Bloomfield Township *zoning* ordinance there in issue requires planning commission approval for "boat launching, docking or mooring."

An application by West Bloomfield Township for leave to appeal is pending in this Court in *Hess.* West Bloomfield Township there asks this Court to

---

[14] In *Hilt v Weber,* 252 Mich 198, 225; 233 NW 159 (1930), this Court said that docking boats, "[t]o wharf out to navigability," are riparian rights. "Riparian rights are property, for the taking or destruction of which by the State compensation must be made . . . ."

There is no doubt that a riparian owner can grant an easement over his land to permit a nonriparian owner to have access to the water. [*Thompson v Enz,* 379 Mich 667, 696; 154 NW2d 473 (1967) (BRENNAN, J., dissenting).]

consider whether *Fox & Associates* was correctly decided. The instant appeal should not be decided until this Court decides whether to grant leave to appeal in *Hess.* If leave to appeal is granted, the correct disposition here would be to order reargument with *Hess.*

If this Court, either in *Hess* or in some other case, concludes that the regulation of boat docking or launching in the manner provided for in the West Bloomfield Township (*Hess*) zoning ordinance or the Hayes Township (*Fox & Associates*) zoning ordinance is within the delegation of zoning power under the TRZA, then the decision today, that the docking or launching of motorboats may, because such regulation is *not* zoning,[15] be regulated in the manner provided in Bloomfield Township ordinance no. 397, should at the same time be reconsidered, and either

—relief should be granted to the members of the plaintiff condominium association, or

—this Court should reconsider the rule of law, well established in this and other jurisdictions— see part II—that a zoning regulation may not be enacted by a local unit of government under a general delegation of the police power, such as the township ordinance act.

I

Ordinance no. 397 provides that "no launching and/or docking [of a motorboat] shall be permitted with respect to a separate frontage of less than 100 feet," and that if the continuous length of a separate frontage is greater than 150 feet, one additional boat may be launched and docked for each 100 feet of continuous frontage in excess of

---

[15] "Bloomfield Township ordinance no. 397 is *not* a zoning ordinance." *Ante,* p 323 (emphasis in original).

the initial 150 feet, and that the 100 feet min-
imum shall not apply to "lots or parcels constitut-
ing a building site of record" before the effective
date of the ordinance.[16] This ordinance thus locates
the property surrounding Square Lake in a num-
ber of different zones:

---

[16] Bloomfield Township ordinance no. 397 provides:

The Township of Bloomfield Ordains:  ·

\*   \*   \*

ARTICLE III. Definitions.

Section 3.1. For the purpose of construction and application
of this Ordinance, the following definitions shall apply:

\*   \*   \*

(e) "Separate Frontage" means that portion of a lot or parcel
of land existing on documentation recorded within the Oakland
County Register of Deeds, which abuts or intersects with the
normal high water mark of a lake, whether such lot or parcel
is owned by one or more persons, or commonly owned by
several persons, or combinations of persons.

ARTICLE IV. Regulations.

Section 4.1. Subject to the provisions below, not more than
one boat shall be launched and/or docked adjacent to each
separate frontage.

Section 4.2. If the continuous length of a separate frontage is
greater than 150 feet, one additional boat may be launched
and/or docked for each 100 feet of continuous frontage in
excess of the initial 150 feet. For the purpose of computing the
length of frontage, the measurement shall be along the water's
edge at the normal high water mark of the lake as determined
by the Department of Natural Resources, or if the Department
has not made such a finding, the normal high water mark
location shall be determined in the [discretion] of the Township.
Moreover, the measurement shall be made only along a natural
shoreline, and shall not include any man-made[ ] channel,
lagoon, canal or the like.

Section 4.3. Following the effective date of this Ordinance, no
launching and/or docking shall be permitted with respect to a
separate frontage of less than 100 feet, provided, this provision
shall not apply to lots or parcels constituting a building site of
record prior to the effective date of this Ordinance.

| CONTINUOUS FRONTAGE ON SQUARE LAKE | NUMBER OF MOTORBOATS PERMITTED |
|---|---|
| Property with less than 100 feet *not* "constituting a building site of record" prior to the effective date of ordinance no. 397, is one zone | None |
| Property with less than 100 feet that *does* constitute "a building site of record" prior to the effective date of the ordinance, is another zone | One |
| Property with 100 to 249 feet is another zone | One |
| Property with 250-349 feet is another zone | Two |
| Property with 350-449 feet is another zone | Three |
| Property with 450-549 feet is another zone | Four |
| Property with 550-649 feet is another zone | Five |
| Property with 650-749 feet is another zone | Six |
| Property with 750-849 feet is another zone | Seven |
| Property with 850-949 feet is another zone | Eight |
| Property with 950-1049 feet is another zone | Nine |

Under the foregoing zoning classifications, all the members of the plaintiff condominium association may singly or in combination dock and launch but one motorboat from the 160-foot parcel in which each member of the plaintiff condominium

association has a vested property right of access to the lake.[17]

## II

The police power resides in the state. Cities, townships, and other local units of government may only exercise the police power to the extent it has been delegated to them by the state:

> The governmental authority known as "police power" is concededly an inherent attribute of State sovereignty. It only belongs to subordinate governmental divisions when and as conferred by the State either through its Constitution or constitutionally authorized legislation. [*Clements v McCabe,* 210 Mich 207, 215; 177 NW 722 (1920).]

Before the enactment of zoning enabling acts delegating zoning power to local units of government, the Legislature had delegated to local units of government other components of the police power under general enabling acts such as the township ordinance act. The question arose whether local units of government could zone in the exercise of such a general grant of police power. This Court,[18] and other courts, ruled they could not. Indeed, Bloomfield Township acknowledged in its brief that "[t]here are areas of regulation, such as zoning, which have been held to be excluded from this general conferral of authority [of police power] . . . ."

Maryland's highest court said:

---

[17] The members of another condominium association, which share the right to use the 160-foot out-lot, apparently have the right to launch nine motorboats, because their condominium units front on roughly 1,000 feet of Square Lake. They are not parties to this litigation.

[18] *Id.,* p 215.

We, and our predecessors, have held that the zoning powers of municipal corporations are derived from the State Enabling Acts and not from any general grant of the State's police power to municipal corporations. [*Lunter v Laudeman,* 251 Md 203, 209; 246 A2d 540 (1968).][19]

A municipality may not avoid the substantive and procedural limitations of a zoning enabling act by claiming that an ordinance that enacts regulations that are within its power to enact under a zoning enabling act is valid as an enactment pursuant to the general police power. *Krajenke Buick Sales v Hamtramck City Engineer,* 322 Mich 250, 255; 33 NW2d 781 (1948).[20]

Other authorities agree:

It is true that zoning power is justified only as an exercise of the general police power but *this will not permit a municipality to evade the protections thrown about the citizen's use of his property by the legislative limitations imposed on the zoning power by the device of labeling a zoning act a mere exercise of police power.* [*Ellison v Fort Lauderdale,* 183 So 2d 193, 195 (Fla, 1966). Emphasis added.][21]

---

[19] The court ruled that an ordinance adopted by the mayor and aldermen that prohibited the petitioner from attaching a pier with four permanent slips to his riparian lot was invalid because the Legislature had not provided the mayor and aldermen the power to consider zoning questions.

[20] Krajenke commenced an action to require issuance of a building permit. It averred that its application for the permit was in proper form and complied with all requirements. The municipality contended that the building would violate an ordinance requiring new construction to conform to the established building line in the district. It further contended that the ordinance was not a zoning ordinance, but a building code. This Court invalidated the ordinance because it was not enacted in compliance with the zoning enabling act.

[21] The court invalidated an ordinance barring horses on land zoned R-O because it was not adopted according to the procedures set forth in a zoning enabling act.

Where a municipality has general police powers as well as specific zoning authority, it must adopt and enforce zoning regulations under the specific grant rather than the general one. [1 Anderson, American Law of Zoning (3d ed), § 2.20, p 70.]

In *Bane v Pontiac Twp, supra,* the plaintiffs were poor people who had lived in trailer homes for many years. This Court held that a township ordinance which mandated running water, inside toilets, and prohibited the use of trailer homes outside of trailer parks, could not be applied to the plaintiffs' preëxisting nonconforming use.

The Court said that "this particular provision in regard to trailers *has the effect of a zoning, rather than a building, regulation ordinance." Id.,* p 492 (emphasis added). Since the plaintiffs' occupancy of trailers outside designated trailer parks constituted a preëxisting nonconforming use, the law, which had "the effect of a zoning," could not be enforced against them.[22]

This Court has also ruled that unless the procedural requirements set forth in a zoning enabling act for the enactment of a zoning ordinance are "strictly adhered" to, the enactment is not valid:

Indeed, this Court has consistently held that the procedures outlined in the zoning-enabling act must be strictly adhered to. *Krajenke Buick Sales v Hamtramck City Engineer,* 322 Mich 250 (1948);

---

[22] The plaintiffs there were subject, as are the members of the condominium association here, to the law of nuisance. *Id.,* p 494.

Ordinance no. 397 accommodates some preëxisting nonconforming uses by permitting certain owners with less than one hundred feet of lake frontage to launch and dock a boat if the lot constituted "a building site of record prior to the effective date of this Ordinance." Section 4.3.

Bloomfield Township ordinance no. 340, which is not before the Court, makes no such accommodation. Ordinance no. 340 requires nonriparian owners to obtain prior approval from the Township Zoning Board of Appeals before making any use of inland lakes.

*Stevens v Madison Heights,* 358 Mich 90 [99 NW2d 564] (1959). As we stated in *Stevens:*

"The statute spells out a certain procedure that must be followed to enact a zoning ordinance; this procedure admittedly was not followed by the city in this case; and therefore the ordinance in question is invalid." 358 Mich 90, 93.

Therefore, the amendment to the ordinance, having been enacted by a procedure different from and contrary to the procedure required by the zoning-enabling act, is invalid. [*Korash v Livonia,* 388 Mich 737, 746; 202 NW2d 803 (1972).]

### III

Bloomfield Township contended that this ordinance was a zoning ordinance until the Court of Appeals held that the TRZA did not provide townships with the power to regulate boat docking. See *Fox & Associates, Inc v Hayes Twp, supra.*[23] In Bloomfield Township's answer to the motion for preliminary injunction, Bloomfield Township stated that it "admit[s] that this action involves the validity of two ordinances enacted by Bloomfield Township *to regulate land-use related lake access.*" (Emphasis added.)

In its "brief in opposition to preliminary injunctive relief," Bloomfield Township defended the

---

[23] The ordinance at issue in *Fox & Associates* prohibited more than one "mooring, slip or dock space for each one hundred (100) feet of lake frontage," and limited access to Lake Charlevoix to one living unit for each 100 feet of lake frontage, § 5.13(A) and (B) of the Hayes Township Zoning Ordinance. Hayes township did not contend in *Fox & Associates* that these restrictions did not constitute zoning.

Neither does the township so contend in *West Bloomfield Twp v Hess,* Michigan Supreme Court, Docket No. 91240, where the township refused to allow the plaintiff to construct a seasonal boat dock for the use of subdivision homeowners on a common riparian lot. West Bloomfield Township attempted to distinguish *Fox & Associates* by arguing that it was regulating land use, which is authorized by the TRZA, and not regulating water use as was Hayes Township in *Fox & Associates.*

validity of ordinance no. 397's limitations on boat docking *solely* on the basis that the TRZA authorized the adoption of the ordinance, and that the provisions of the ordinance constituted a reasonable exercise of the *zoning* power.[24] The township ordinance act, delegating elements of the police power but not the zoning power,[25] was not mentioned in the brief.

Seven days after that brief was filed, *Fox & Associates* was decided by the Court of Appeals. Since then, Bloomfield Township has been striving to show that ordinance no. 397 is *not* a zoning ordinance. Nevertheless, in its brief on appeal to this Court, Bloomfield Township states:

> [I]t is a matter of elementary logic that regulation of waterways and water front development, *including boat launching and boat dockage,* is clearly contemplated in the *overall scheme of township planning and zoning.*
>
>      \*   \*   \*
>
> It will be demonstrated in the Argument portion of this Brief that it would be legally sound to construe Act 246 [the township ordinance act] and ZEA [Township Rural Zoning Act] as delegating to townships the authority to regulate boat launching and boat dockage. Moreover, construing Act 246 and ZEA in such a manner is compelled by the policy consideration that planning, *zoning* and

[24] The brief states:

The Township Zoning Enabling Act, MCL 125.271, *et seq.* [MSA 5.2963(1) *et seq.*], expressly authorizes the enactment of a zoning ordinance to achieve: the needs of the state citizens for natural resources and recreation; facilitate adequate and efficient provisions for water and recreation; to conserve natural resources; and to promote the public health, safety and welfare. Defendant submits that such broad grants of authority clearly provide the Township with the right to regulate land-use related lake access, particularly for recreational purposes.

[25] See n 3.

regulation is effective only when undertaken on a township-wide basis. [Emphasis added.]

IV

Provisions substantially affecting or interfering with the use and enjoyment of land are zoning provisions:

If an ordinance substantially affects land use, it must be enacted under the procedures which govern zoning and rezoning. [*City of Sanibel v Buntrock,* 409 So 2d 1073, 1075 (Fla App, 1982).]

We emphasize that ordinarily municipalities must follow statutory or charter zoning procedures strictly whenever they propose a substantial interference with land use, for such procedures are constitutionally mandated to insure that private property owners receive due process of law. [*City of Escondido v Desert Outdoor Advertising, Inc,* 8 Cal 3d 785, 790; 106 Cal Rptr 172; 505 P2d 1012 (1973).]

Where the particular restriction constitutes, or would constitute, a substantial interference with land use, the municipality ordinarily must treat it as a zoning regulation and must follow statutory or charter zoning procedures, even though other authority for the particular type of ordinance has been granted. [1 Rathkopf, Zoning and Planning, § 1.02(3), p 1-29.]

Zoning is governmental regulation of the uses of land and buildings according to districts or zones. [8 McQuillin, Municipal Corporations, § 25.01, p 6.]

Bloomfield Township ordinance no. 397 is a zoning ordinance; it both substantially affects the use and enjoyment of back land, and substantially interferes with the use and enjoyment of back

land. The ordinance does not limit the times that motorboats may be operated.[26] Nor does it mandate safety procedures or provide for licensing of motorboats without regard or unrelated to the ownership and use of land, and back land in particular.

Owner-members of the plaintiff condominium association each possess an undivided interest in a lake-access easement.[27]

The ordinance is designed to deny motorboat lake access to landowners having property rights in lake frontage where the land on which their home is located is in a back-lot zone and not within a frontage zone. Such a limitation on a back-lot owner's right to exercise a property interest that runs with the back lot substantially affects and interferes with the use and enjoyment of the land, and is a zoning limitation.

Ordinance no. 397 was enacted as a step in Bloomfield Township's ongoing effort to control multiunit development around lakes in the township, which began in the early 1960's when developers successfully challenged certain single family zoning classifications. Attempting to avert the perceived detrimental effects of "funnel development,"[28] Bloomfield Township in 1974 began the

[26] See *Miller v Fabius Twp Bd,* n 7 *supra.*

[27] *McCardel v Smolen,* 404 Mich 89; 273 NW2d 3 (1978), relying on *Cass Co Park Trustees v Wendt,* 361 Mich 247; 105 NW2d 138 (1960), and *Backus v Detroit,* 49 Mich 110; 13 NW 380 (1882).

[28] In *Lunter v Laudeman, supra,* see n 19 and accompanying text, a riparian lot owner applied to the "Port Wardens," for permission to construct a pier with boat slips on his lot. Neighboring property owners objected, but the wardens, who had jurisdiction only to consider navigation problems in their decision, approved. The mayor and aldermen overruled them by ordinance, and barred construction of the pier.

Maryland's highest court held that there was no evidence that the pier would hinder navigation, and that the action of the mayor and aldermen was taken in response to complaints by the neighbors that " 'we worry about the fact that it is a residential area, and we would like to keep it that way.' " These objections were, "in regard to the possible use of the pier for commercial purposes or by more boats

first in a series of attempts to limit the lake-access rights of back-lot owners.[29]

## V

The majority asserts that "[l]aunching and docking boats on inland lakes are 'activities,' and the number of boats that can be launched or docked is very much akin to a parking regulation on a residential street."[30]

A street parking regulation does not, however, preclude the "launching" of a vehicle, parked in a garage or elsewhere, into the stream of traffic. Ordinance no. 397 seeks to do just that, to preclude not only the docking of a motorboat, but also the launching, of a motorboat into the lake.

The right to dock, in contrast with street parking on a residential street, includes the right to create parking, "[t]o wharf out to navigability."[31] The construction of a dock enlarges the parking available for mooring boats. Ordinance no. 397 thus does not allocate the available parking, as does a street parking regulation, but rather seeks to reduce the available parking.

Characterizing launching and docking as an "activity" does not advance the analysis. Regulating the use of lands and buildings is clearly zoning, although one who uses lands and buildings is clearly, when using lands or buildings, engaged in an activity.

The majority states that "[a] zoning ordinance is defined as an ordinance which regulates the use of *land* and *buildings* according to districts, areas, or

than supposedly permitted in a Residential c zone" and, "the problem, if any, is a zoning problem over which . . . the Port Wardens [and mayor and aldermen] have no jurisdiction." *Id.,* p 213.

[29] See n 22.

[30] *Ante,* pp 324-325.

[31] *Hilt v Weber,* n 14 *supra.*

locations."[32] To the extent that the majority's analysis depends on distinguishing between a regulation of the use of *"land* and buildings" and a regulation respecting launching and docking boats on "inland *lakes,"*[33] the analysis tends to support the conclusion of the Court of Appeals in *Fox & Associates:*

> Even with the liberal construction of the provisions of the constitution in mind, we do not believe that the TRZA grants authority to townships to regulate or limit boat dockage construction or riparian access rights. After consideration of all the applicable rules of statutory construction, we can only conclude that the Legislature, in enacting the TRZA, *granted authority to townships to zone land use but not water use or to regulate riparian rights.* Accordingly, the provisions in the Hayes Township zoning ordinance which limit boat dockage and "funnel development," § 5.13(A) and (B), are invalid.[34] [*Fox & Associates,* p 656.]

## VI

The actions of Bloomfield Township in distin-

---

[32] *Ante,* p 323 (emphasis added). McQuillin states that whether an ordinance is zoning depends on the "nature and purpose of the ordinance, its relation to the general plan of zoning in the city, its provisions and the terms used." 8 McQuillin, Municipal Corporations, § 25.10, p 31.

[33] "The ordinance does *not* regulate the use of land or lake frontage" (*ante,* p 323) (emphasis in original); "[l]aunching and docking boats *on inland lakes* are 'activities' "; "a township regulation of docking and launching boats *on its inland lake*" (*ante,* pp 324, 325) (emphasis added).

[34] The TRZA expressly lists the specific subjects which a township may regulate. Section 1, as quoted above, states that townships may provide by zoning ordinance for the "regulation of land development," "establishment of districts," "regulate the use of land and structures," "limit the inappropriate overcrowding of land," etc. The only mention of "water" in § 1 is in the provision quoted above relevant to the "efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements." [*Fox & Associates,* p 654.]

guishing in ordinance no. 397 between property owners on the basis of location of the land and the dimensions of their interests substantially affects and interferes with the use and enjoyment of back land and constitute zoning.[35] Because ordinance no. 397 was not enacted pursuant to the procedures prescribed by the TRZA, the ordinance is not valid.

CAVANAGH, C.J. I agree with Justice LEVIN that the ordinance in question is an exercise of the township's zoning power. This Court has expressly held that riparian owners enjoy exclusive rights including the right to erect docks and the right to anchor boats.[1] In addition, riparian rights are property rights.[2] The nature of the right does not prevent the township from regulating the right, but it requires the township to do so under the Township Rural Zoning Act, MCL 125.271; MSA 5.2963(1). As a property right, the right to dock

---

[35] In contending that the provisions of ordinance no. 397 are not authorized by the TRZA, the condominium association is not asserting that the ordinance is not a zoning ordinance, but rather that the scope of the provisions of ordinance no. 397 exceeds the zoning power that was delegated by the terms of the TRZA.

This Court need not decide whether the TRZA authorizes a township to regulate motorboat docking and launching. Since Bloomfield Township concedes that it did not follow the procedures prescribed by the TRZA when ordinance no. 397 was adopted, the ordinance is invalid even if the scope of the ordinance does not exceed the scope of the zoning power delegated to townships.

[1] Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore. [*Thies v Howland,* 424 Mich 282, 288; 380 NW2d 463 (1985) (citations omitted). See also *Hilt v Weber,* 252 Mich 198, 226; 233 NW 159 (1930).]

[2] While the exact nature of [riparian] rights has been variously described, it is generally agreed that they constitute property rights, possessing the usual attributes and incidents of property, and are entitled to protection as such. [78 Am Jur 2d, Waters, § 262, p 706.]

boats might more appropriately be accomplished under the provisions of the TRZA. The parties admit that the ordinance in question was enacted without regard to the public hearing provisions of the TRZA and, therefore, the ordinance must fail.[3]

I also concur with Justice LEVIN's assertion that the township could, under the township ordinance act, properly enact a regulation barring the unsafe docking of boats, or regulating the hours of boating, or limiting the speed of boats upon the lake. But the ordinance at issue does more than regulate activities. Article IV, § 4.1 of the contested ordinance declares that "not more than one boat shall be launched and/or docked adjacent to each separate frontage." The ordinance restricts the riparian rights of the property owners on the basis of the length of lake frontage, it is, therefore, distinguishable from ordinances regulating activities as in *Miller v Fabius Twp Bd,* 366 Mich 250; 114 NW2d 205 (1962), and *Checker Cab Co v Romulus Twp,* 371 Mich 232; 123 NW2d 772 (1963).

I would affirm that portion of the Court of Appeals decision which held that the township does not have authority under the township ordinance act to regulate these property rights.

MALLETT, J., took no part in the decision of this case.

---

[3] For a declaration that ordinance no. 397 was not adopted under the authority of the Township Rural Zoning Act, see Affidavit of Township Clerk. In addition, the attorney for Bloomfield Township declared during oral argument that only a general police power ordinance was before this Court, not a zoning ordinance.