# STATE OF MICHIGAN

# COURT OF APPEALS

LAKESIDE RESORT, LLC, d/b/a SUNSET
BEACH CAMPGROUND,

UNPUBLISHED
April 5, 2016

Plaintiff-Appellant,

v

No. 324799
Montcalm Circuit Court
LC No. 11-015389-CZ

CRYSTAL TOWNSHIP,

Defendant-Appellee.

Before: MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

Plaintiff Lakeside Resort, LLC (Lakeside), appeals as of right the trial court's order granting summary disposition in favor of defendant Crystal Township (the township) in this case arising out of Lakeside's failed efforts to develop, by way of a planned campground and marina, its property located on Crystal Lake, which envisioned development was effectively blocked, according to Lakeside, by unlawful actions taken by the township, including the enactment of two now-repealed ordinances. Lakeside's lawsuit against the township alleged various inverse condemnation theories (de facto taking, regulatory taking, and unreasonable delay in acquiring property), state and federal procedural and substantive due process violations, and infringement of Lakeside's state and federal equal protection rights. The trial court summarily dismissed Lakeside's action, ruling, either in whole or in part, that the causes of action were time-barred, that there was no evidence of a de facto taking, that the township was shielded by governmental immunity, that Lakeside's alleged damages were speculative, and that Lakeside's claims were moot. On appeal, Lakeside challenges only the dismissal of the inverse condemnation claims. We affirm.

## I. FACTUAL OVERVIEW

Lakeside owns or has an ownership interest in approximately 57 total acres of real property on or near the eastern shore of Crystal Lake in Crystal Township, which property is comprised of several contiguous parcels, one of which includes a sandy beach spanning 248 feet of the lakeshore. The property had been accumulated in piecemeal fashion and through various precursor corporate entities or Lakeside-related persons over a period of years beginning in 1994 with the purchase of land upon which a hotel was located, followed a year or so later with the purchase of land upon which a motel was located. The hotel and motel were eventually razed in

-1-

2005, at which point Lakeside's property was essentially vacant. Lakeside's beachfront property is part of a longer stretch of beach known as Crystal Beach, and the township owns and operates Crystal Park, which also encompasses part of Crystal Beach and is located on the eastern shore of the lake, just a little to the south of Lakeside's beachfront property.

From 1991 forward, the township engaged in planning and multiple property purchases relative to the expansion of Crystal Park, all in an effort to increase the public's access to swimming, picnicking, boating, docking, and parking. Lakeside characterized these plans as contemplating or envisioning the eventual acquisition of some or all of Lakeside's property, which has not come to fruition. In support of its view that the township's goal was to obtain Lakeside's property, Lakeside relied, in part, on minutes from a 1991 annual Crystal Township Board ("board") meeting, which provided that "[i]f the Beach front between the are[a]s known as the slab area & Merry Go Round is available for purchase[,] the . . . [b]oard hereby give[s] permission to make such a purchase." Lakeside also cited a downtown redevelopment plan adopted by the board in 1995 that contemplated utilization of some of Lakeside's property for public access and use. Finally, Lakeside relied on a 1996 recreation plan that called for improving Crystal Park and the beachfront, increasing public access to swimming and picnicking on Crystal Lake, and constructing walking and biking trails around the lake. In an affidavit executed by the township clerk, who had held various township positions since 1987, including board trustee, the clerk averred:

> 9.     At no time during my service as a Board Trustee, Board Supervisor, or Board Clerk, including the present time, did the Township Board make a decision to acquire or obtain, by any means, any portion of property currently owned by Lakeside . . . .

> 10.     In reference to [the minutes from the 1991 annual board meeting quoted above] . . ., the Township Board was authorized to purchase beachfront property if it became available. . . . However, the Township Board did not have an acquisition plan, a land use plan, and was not actively seeking to acquire any portion of property currently owned by [Lakeside]. Moreover, at no time has the Crystal Township Board adopted a resolution, or ma[d]e any decision to purchase any of the property currently owned by [Lakeside.]

> 11.     The purchase of property[1] . . . was in response to unplanned opportunities as they presented themselves. . . . .

> 12.     The properties acquired by the Township did not interfere with [Lakeside's] use of the property, did not compete with any business interests or plans . . ., [and] did not detract from the value of [Lakeside's] property[.]

> . . .

---

[1] This was a reference to the purchase of parcels in the surrounding area other than Lakeside's property.

14.	In reference to [the 1995 redevelopment plan] . . ., the primary objective of this plan was to take advantage of grant dollars which would allow the improvement in the downtown area. . . . Many of the goals in the[] plan[] were not achieved or even addressed beyond the original adoption of the plan.

15.	[With respect to the 1996] plans to improve Crystal Park . . .[,] [n]one of the goals or plans called for the acquisition or use of any portion of the property currently owned by [Lakeside].

Pursuant to a letter dated October 30, 2002, from the board's attorney to Lakeside, the attorney complained about Lakeside having erected fences and signs on Lakeside's beachfront property, which the attorney characterized as property "used by the public as [a] public beach for many years." The attorney closed the letter by stating, "Please remove, on or before November 30, 2002, the fencing, signs and any other impediments you have erected or placed which impede the public's use of the beachfront property." Lakeside responded to the demand by correspondence dated November 22, 2002, informing the board's attorney that the signs and fences had been in place for quite some time, that Lakeside had previously offered to lease its beachfront property to the township for a nominal amount, which offer was ignored, that the beachfront property was owned by Lakeside and not the township and the township thus had no authority to dictate removal of the signs and fences or to demand public access, and that any action taken by the township against Lakeside for not removing the signs and fences or for not allowing public access would be viewed as a violation of Lakeside's property rights.

Shortly thereafter, on December 11, 2002, the township adopted Lake Access Ordinance No. 15 (LAO § 15). LAO § 15 set forth numerous requirements in order for a parcel or lot to be used as lake access property.[2] These requirements included having a "width, measured at the narrowest point of the parcel or lot, of not less than 50 feet, multiplied by the total of the number of owners of said parcel or lot and the persons permitted to use the access property[,]" along with having "[l]inear frontage, measured in a straight line which intersects each side parcel or lot line at the water's edge, of not less than 50 feet, multiplied by the total of the number of owners of said parcel or lot and the persons permitted to use the access property." LAO § 15, ¶ 3.1(B) and (C). For purposes of these requirements, "any combination of the following [was to] be considered one owner or user of access property: husband, wife, parent, child, brother, sister, grandparent, and grandchild[;]" and "any two individual persons not [so] described" was to also be "considered one owner or user of access property." LAO § 15, ¶ 3.1(E). LAO § 15, ¶ 3.1 *et seq.*, was construed as restricting lake access to only one family or couple per 50 feet of

_____

[2] "Access property" was defined, in pertinent part, as "a parcel or lot abutting, contiguous or adjacent to a lake, or which has access to a lake, and which is used or intended to be used for providing access to a lake by pedestrian or vehicular traffic, regardless of whether said access to the lake is gained by . . . common ownership, single ownership, [or] business invitation . . . ." LAO § 15, ¶ 2.1.

beachfront.[3]  A violation of LAO § 15 constituted a municipal civil infraction, providing for a fine of not more than $500, in addition to costs, damages, expenses, and other remedies available by law.  LAO § 15, ¶ 4.1.  Finally, LAO § 15, ¶ 1.4 (grandfather clause) provided, "Nothing in this ordinance shall be construed to prevent the continued use of access property as established and used prior to the effective date of this ordinance."  As of the date of LAO § 15's adoption, Lakeside was still operating the motel, which was on the lakefront parcel, and which was operated until 2005.

In 2004, Lakeside determined that the highest and best use of its property would be as a state-licensed RV campground and marina, and it retained a surveyor and engineer to prepare plans required by the state to obtain permits mandated by state law to operate a campground.  In July 2005, Lakeside submitted plans and a permit application to the DEQ for the construction of a 39-site campground, which was later amended to a 33-site campground application.  In October 2005, the township sent a letter to the DEQ in regard to Lakeside's application, informing the DEQ that a township ordinance, ostensibly LAO § 15, "would restrict the use of [Lakeside's] beach frontage."  The DEQ responded to the township's letter by correspondence indicating that the DEQ lacked "the authority to deny project approval for failure to comply with [the township's] ordinance."  In January 2007, the DEQ granted Lakeside a permit for "the construction of a 33-site modern campground with individual site water, sewer, and electrical connections."  In April 2007, the township sent a letter to Lakeside warning that, regardless of the DEQ's permit allowing the campground, Lakeside still had to fully comply with LAO § 15. On September 12, 2007, the township adopted LAO § 15-A, which repealed LAO § 15, but which essentially contained the same requirements as those found in LAO § 15 with respect to a parcel's use as a lake access parcel.  LAO § 15-A, ¶ 3.1.  The new ordinance did provide that nothing in it "shall be construed to prevent the continued use of an access property as lawfully established and actually used prior to the effective date of this Ordinance, but only at the same scope, intensity and fashion as occurred prior to February 6, 2003."  LAO § 15-A, ¶ 4.1.  The

---

[3] In 1999, the township had enacted an extensive and comprehensive Interim Zoning Ordinance (IZO), which spanned all land uses in the township and included language regarding waterfront lots used to access waterways.  Section 6.25.3(B) provided, "Where the access lot is providing waterway access to more than one access lot beneficiary such access lot shall have at least an additional fifty (50) feet of frontage on the waterway for each additional access lot beneficiary." In January 2002, the IZO expired, with the township being unable to complete the drafting and adoption of a permanent zoning ordinance.  Newspaper clippings submitted by Lakeside revealed that the IZO and the efforts at enacting a permanent zoning ordinance were hot topics in the community, with some citizens holding the view that no zoning ordinance was necessary. Lakeside never challenged the propriety of the IZO, nor complained of its impact on its property. Rather, Lakeside railed against LAO § 15 and a later LAO that replaced it, see infra, focusing on the assertion that the LAOs were actually "zoning" ordinances, improperly characterized as general police power ordinances under the township ordinances act, MCL 41.181 *et seq.*, which LAOs were not adopted or enforced in compliance with statutory rules governing "zoning" ordinances.

penalty for a violation was changed to *no less than* $500 per offense, LAO § 15-A, ¶ 5.1, where previously, as indicated above, it was not more than $500 per offense.

For the next several years, Lakeside and the township tussled over Lakeside's efforts to have LAO § 15-A repealed or to be granted a variance from its application. In May 2010, at a public board meeting, the board, acting on a long-pending variance request, granted Lakeside permission to construct campsites, but only as to 25 sites. Lakeside claimed that the township had not notified it of the meeting or of the fact that the board was planning to make a decision on Lakeside's variance request. Finally, in August 2012, after the litigation had commenced, the township repealed LAO § 15-A, and it was not replaced. We note that in the lower court proceedings, Lakeside devoted much discussion in its pleadings to other properties on Crystal Lake, characterizing the properties as being similarly situated to Lakeside's property, including South Shore Campground, which is a campground and marina, Norwest Tack No. 2, which is a residential subdivision on the lake, and property held by a township official, which has rental cottages and a marina. Lakeside complained about a litany of situations in which, according to Lakeside, those properties and their respective owners were treated differently and more favorably than Lakeside.

## II. PROCEDURAL HISTORY

On November 1, 2011, Lakeside filed a complaint against the township, setting forth 251 separate paragraphs and seven counts over 77 pages, with nearly 80 exhibits being attached, and comprising two full court files. Because the nature of the counts evolved before being finalized in a third amended complaint, we shall, at this stage of the opinion, just briefly summarize those counts as found in the original complaint. Count I alleged a procedural due process violation under the Michigan Constitution, art 1, § 17, and requested money damages. Count II alleged a substantive due process violation under the Michigan Constitution, art 1, § 17, and requested money damages. Count III alleged an equal protection violation under the Michigan Constitution, art 1, § 2, and requested money damages. Count IV alleged inverse condemnation on the basis of a de facto taking of property and requested money damages. Count V alleged inverse condemnation on the basis of the township's unreasonable delay in acquiring property and requested money damages. Count VI alleged inverse condemnation on the basis of a regulatory taking and requested money damages. And count VII alleged a claim seeking injunctive relief or a writ of mandamus.

On December 21, 2011, the township filed an answer to Lakeside's complaint. In July 2012, the township filed a motion for summary disposition, arguing that all of Lakeside's claims were time-barred by a six-year limitations period, MCL 600.5813,[4] having accrued in 2002 when LAO § 15 was adopted, and that the due process and equal protection claims were not viable because monetary damages for violations of the Michigan Constitution are not an available remedy. On September 24, 2012, the trial court entered an order rejecting the township's statute

---

[4] MCL 600.5813, which is a general catch-all provision, states, in full, that "[a]ll other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."

of limitations argument with respect to the three inverse condemnation claims, instead concluding, as stated at the hearing on the summary disposition motion, that a 15-year limitations period applied under MCL 600.5801(4).[5] The trial court did not address whether the statute of limitations barred the due process and equal protection claims, given that it ruled that those claims could not survive because only declaratory relief was available for a violation of the Michigan Constitution and Lakeside had requested money damages. The trial court, however, did grant Lakeside leave to file an amended complaint.

On October 12, 2012, Lakeside filed a first amended complaint. In the amended complaint, Lakeside modified its three due process and equal protection claims to simply request declaratory relief, asking the trial court to declare LAO § 15 and § 15-A unconstitutional. Lakeside also dropped count VII from the complaint, which had requested equitable relief. In the meantime, the township had filed an application for leave to appeal in this Court with respect to the statute of limitations ruling, and Lakeside itself, which believed that the trial court had properly applied the 15-year limitations period, also asked this Court to grant leave in order to settle the issue, so that the parties could avoid any unnecessary litigation costs. In December 2012, the trial court stayed the proceedings to await a ruling by this Court. In July 2013, the trial court lifted the stay and allowed Lakeside to file a second amended complaint, even though this Court had yet to rule on the township's application for leave. In September 2013, this Court denied the township's application for leave to appeal "for failure to persuade the Court of the need for immediate appellate review." *Lakeside Resort, LLC v Crystal Twp*, unpublished order of the Court of Appeals, entered September 23, 2013 (Docket No. 312833).

On November 12, 2013, Lakeside, after having previously filed a second amended complaint, filed a third and final amended complaint. Count I alleged a procedural due process violation under Const 1963, art 1, § 17, and 42 USC 1983 (US Const, Ams V and XIV) relative to the enactment of LAO § 15 and § 15-A, requesting money damages. Lakeside alleged that the township deprived it of procedural due process by regulating and limiting Lakeside's vested right to use its riparian property for exclusive and unrestricted access to Crystal Lake through employment of purported general police power ordinances, LAO § 15 and § 15-A, that were actually zoning ordinances that should have been, but were not, enacted and enforced pursuant to the requirements of the former Township Zoning Act (TZA), MCL 125.271 *et seq.*, repealed by 110 PA 2006, and its successor, the Michigan Zoning Enabling Act (MZEA), MCL 125.3101 *et*

---

[5] MCL 600.5801 provides, in pertinent part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section. . . . .

> (4) In all other cases under this section, the period of limitation is 15 years.

*seq.*[6] Count II alleged a substantive due process violation under Const 1963, art 1, § 17, and 42 USC 1983 (US Const, Ams V and XIV), requesting a declaration that LAO § 15 and § 15-A were unconstitutional, along with money damages. Lakeside alleged that the township violated its substantive due process rights by taking actions indirectly aimed at Lakeside that were arbitrary, unreasonable, and failed to advance a legitimate governmental interest relative to the township granting variances to other property owners without following a standardized published process or set of criteria and absent a public record showing the township's reasoning for granting variances. Count III alleged an equal protection violation under Const 1963, art 1, § 2, and 42 USC 1983 (US Const, Am XIV), requesting a declaration that LAO § 15 and § 15-A were unconstitutional as applied, along with money damages. Lakeside alleged that the township deprived it of its equal protection rights by failing to treat Lakeside the same as similarly-situated property owners with respect to application of LAO § 15 and § 15-A and the granting of variances therefrom. Lakeside asserted that the township "also failed to authorize the same amount of lake access rights under the [o]rdinance[s] that the [t]ownship had authorized and reserved for itself once it acquires some or all of the [p]roperty from Lakeside to expand Crystal Park."

Count IV alleged inverse condemnation on the basis of a de facto taking of property and requested money damages. In count IV, Lakeside contended that it wished to construct and operate a campground and marina, that the township's expansion plans for Crystal Park called for the future acquisition of part or all of Lakeside's property to use for public access and for a public marina, that LAO § 15 and § 15-A placed severe lake access restrictions on Lakeside's property, and that the expansion plans and the ordinances had an immediate and material impact on Lakeside's ability to fully utilize the property. Lakeside further alleged that the township's actions and expansion plans "effectively prevented Lakeside from the private use of its now vacant property for several years, and . . . effectively prevented Lakeside from constructing the

---

[6] Lakeside's position was that the township improperly adopted LAO § 15 and § 15-A under the authority of MCL 41.181, which provides, in relevant part:

> (1) The township board . . . may adopt ordinances regulating the public health, safety, and general welfare of persons and property, including, but not limited to, ordinances concerning fire protection, licensing or use of bicycles, traffic, parking of vehicles, sidewalk maintenance and repairs, the licensing of business establishments, the licensing and regulating of public amusements, and the regulation or prohibition of public nudity, and may provide sanctions for the violation of the ordinances. . . .

> (2) Ordinances enacted may apply to streets, roads, highways, or portions of the township determined by the township board or may be limited to specified platted lands within the township, and with respect to these lands shall be valid and enforceable whether the roads and streets have been dedicated to public use or not. . . . .

[c]ampground and marina it desire[d] to construct and operate[;]" therefore, the township "inversely condemned the [p]roperty" and did so "without just compensation." Lakeside also alleged in count IV that, through affirmative and targeted actions aimed at Lakeside's property, the township abused its legitimate powers to regulate land use for lake access, failed to employ proper legal mechanisms to enact land use (zoning) ordinances, failed to use proper legal mechanisms to condemn property it desired to acquire, and devalued Lakeside's property in a concerted effort to acquire part or all of Lakeside's property for the planned expansion of Crystal Park.

Count V alleged inverse condemnation on the basis of the township's unreasonable delay in acquiring Lakeside's property through purchase or formal condemnation proceedings, and Lakeside requested money damages. In count V, Lakeside alleged that the township desired and intended to acquire some or all of Lakeside's property for public use, that the township prohibited and intended to continue prohibiting Lakeside's full use of the property in order to facilitate the township's plans to expand Crystal Park, and that the township engaged in actions that interfered with Lakeside's property rights. Lakeside claimed that the township's "unreasonable delay in proceeding with its plans to acquire the [p]roperty ha[d] interfered with Lakeside's property rights to the extent that [the] . . . [t]ownship ha[d] taken the [p]roperty without just compensation[.]" Count VI alleged inverse condemnation on the basis of a regulatory taking and requested money damages. Lakeside alleged in count VI that the township "improperly used its regulations to freeze or drive down the value of the [p]roperty in anticipation of [the] . . . [t]ownship's acquisition of the [p]roperty." In count VI, Lakeside further asserted that township regulations had deprived Lakeside of the economically viable use of the property, interfered with Lakeside's "distinct economic-backed expectations," and forced Lakeside to bear public burdens that should have been borne by the public as a whole. Finally, count VII alleged a claim that the township deprived Lakeside of procedural due process under Const 1963, art 1, § 17, and 42 USC 1983 (US Const, Ams V and XIV), relative to the May 2010 board meeting that was allegedly conducted absent proper notification to Lakeside and that resulted in a partial grant of Lakeside's variance request.

On June 27, 2014, the township filed three separate motions for summary disposition. In one of the motions, the township sought summary dismissal of count VI (inverse condemnation – regulatory taking), arguing that the claim was moot given the repeal of LAO § 15-A in August 2012, that Lakeside had not been deprived of the use of its property when the ordinance was in effect, that a regulatory taking claim cannot be based on damages or lost profits relative to a particular business venture, whether speculative or not, and that a regulatory taking is only sustainable based on a loss of a property's market value, which had not been shown. In one of the other summary disposition motions, the township sought summary dismissal of counts IV and V (inverse condemnation – de facto taking and unreasonable delay in acquiring property, respectively), arguing that the township had no desire or intent to acquire Lakeside's property, by any means, that the township had not committed any acts such as property acquisition, or improvements to neighboring properties, that compromised the value of Lakeside's property, that the township had not limited the use of Lakeside's property, and that the claims were "tort claims dressed in constitutional garb" and barred by governmental immunity, MCL 691.1407(1). In the third motion for summary disposition, the township sought summary dismissal of all the counts in Lakeside's third amended complaint, arguing that they were time-barred. The township maintained that the due process and equal protection claims were barred by the three-year statute

of limitations in MCL 600.5805(10),[7] having accrued when LAO § 15 was adopted in 2002. The township further argued that discovery had confirmed that none of the township's conduct implicated the elements for a claim of adverse possession; therefore, the 15-year statute of limitations in MCL 600.5801(4) did not apply. Instead, according to the township, Lakeside's taking or inverse condemnation claims were subject to and barred by the six-year limitations period in MCL 600.5813.

On July 21, 2014, the township filed a supplemental motion for summary disposition, arguing, as alternative grounds for summary dismissal, that Lakeside did not have a vested and constitutionally protected property interest and thus all of the due process claims should be dismissed, that the adoption of LAO § 15 and § 15-A did not violate any procedural due process rights, that the adoption and application of LAO § 15 and § 15-A did not violate any substantive due process rights, that Lakeside did not have a viable equal protection claim, that the repeal of LAO § 15-A rendered all of Lakeside's claims moot, and that, tied to the mootness argument, the trial court did not have subject-matter jurisdiction to render advisory opinions, so any request for declaratory relief should be dismissed. We shall not discuss, at this point, Lakeside's particular arguments countering the township's motions for summary disposition; rather, in the analysis section of this opinion, we shall entertain those arguments to the extent that they have been renewed on appeal.

On September 8, 2014, the trial court heard the township's multiple motions for summary disposition. We note that on this same date, Lakeside filed a motion for partial summary disposition, arguing that LAO § 15 and § 15-A should be deemed, as a matter of law, illegal zoning ordinances. Given the trial court's ultimate order granting summary disposition in favor of the township, Lakeside's motion for partial summary disposition was never decided by the trial court. With respect to the township's summary disposition motions, the trial court took the matters under advisement, and then issued a written opinion and order on September 22, 2014, dismissing Lakeside's lawsuit. The trial court's opinion is a bit disjointed, providing:

> [The township's] [m]otion for summary disposition based on the statute of limitations is granted under MCR 2.116(C)(7). This court had earlier determined [Lakeside's] cause of action accrued in 2002. This court also finds as a matter of law that a theory of adverse possession does not apply justifying a 15 year statute of limitations. There is no actual claim that defendant is in possession, occupying or using [Lakeside's] property; [Lakeside] is not seeking to recover possession, but is requesting compensatory damages for a taking based on an inverse condemnation theory of liability. [Lakeside] believes that [the township] did or that there was some conspiracy that [it] would or will, but the facts before the court (even in the light most favorable to the non-moving party) do not establish any taking or de facto taking. Only an ordinance that was there and then repealed;

---

[7] MCL 600.5805(10) provides that, "[e]xcept as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."

and, in the light most favorable to [Lakeside], actions by the township factually, possibly, maybe to the detriment of [Lakeside], but not to the extent of any constitutional violation or to constitute a claim for even a de facto taking. There was no loss of market value; there are no restrictions on [Lakeside's] use of the property – only a speculative loss of profit from a possible, future business enterprise, and a *belief* that [the township] was, is and will de facto take [Lakeside's] property.

[The trial court next found that the state and federal due process and equal protection claims were time-barred by a three-year statute of limitations or, alternatively, assuming the applicability of a six-year limitations period, that they were still barred given the accrual of the claims in 2002. We now resume with the trial court's ruling.] [Lakeside's] inverse condemnation claims in counts 4-6 requesting compensatory damages are in essence claims based on tort liability. See MCL 691.1407(1)[.] [A]nd [they] are barred by a three year statute of limitations for tort actions or a six year limitation if there is a viable inverse condemnation claim. In that regards, this court determines as a matter of law that [Lakeside's] inverse condemnation claim in actuality, if there is one, is a tort claim for damages from an interference with a business venture, and thereby subject to the three year statute of limitations. See *Hart v City of Detroit*, 416 Mich 488 (1982).

[The township's] [m]otion for summary disposition on the basis of governmental immunity as to counts 4 and 5 is granted. . . . However worded, [Lakeside's] claims are based on tort liability and subject to governmental immunity, and it is undisputed thereby but that [the township's] actions fall within a protected governmental function entitling [the township] to absolute immunity from tort liability. [Lakeside's] belief, allegations and conclusions do[] not change this reality. [Citations omitted.]

The trial court concluded its opinion and order by ruling that the substantive due process, equal protection, and all of the inverse condemnation claims, as based on the adoption or application of LAO § 15 and § 15-A, were also subject to dismissal because the claims were rendered moot by the 2012 repeal of LAO § 15-A, leaving no restrictions on Lakeside's property.

Lakeside filed a motion for reconsideration, which was denied by the trial court by order dated November 6, 2014. In the order, the trial court observed:

Upon reconsideration, [Lakeside's] claims remain speculative, at best. However worded, notwithstanding the indignation/drama, [Lakeside's] claims are not supported by the evidence, even [when viewed] in the light most favorable to the non-moving party. [Lakeside's] belief, allegations and conclusions do not change this reality.

Lakeside appeals as of right.

III. ANALYSIS

A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), issues of statutory construction, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), the applicability of governmental immunity, *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011), whether an action is time-barred, *Caron v Cranbrook Ed Community*, 298 Mich App 629, 635; 828 NW2d 99 (2012), constitutional matters, *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004), and questions concerning whether an action is moot, *Mich Chiropractic Council v Comm'r of the Office of Fin & Ins Servs*, 475 Mich 363, 369-371; 716 NW2d 561 (2006), overruled on other grounds *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2006).

B. SUMMARY DISPOSITION TESTS

MCR 2.116(C)(7) provides for summary disposition on the basis of "immunity granted by law" and the "statute of limitations." For purposes of MCR 2.116(C)(7), the movant may submit affidavits, depositions, admissions, or other documentary evidence in support of the motion if substantively admissible. *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). The contents of a complaint are accepted as true unless contradicted by the documentary evidence. *Id.* This Court must consider the documentary evidence in a light most favorable to the nonmoving party in analyzing an argument under MCR 2.116(C)(7). *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008). "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Id.* When, however, a relevant factual dispute does exist, summary disposition is not appropriate. *Id.*

MCR 2.116(C)(8) provides for summary disposition when a complaining party fails "to state a claim on which relief can be granted." A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision. *Id.* All factual allegations in the complaint must be accepted as true. *Dolan v Continental Airlines/Continental Express*, 454 Mich 373, 380-381; 563 NW2d 23 (1997). "The motion should be granted if no factual development could possibly justify recovery." *Beaudrie*, 465 Mich at 130.

With respect to the well-established principles governing the analysis of a motion for summary disposition brought pursuant to MCR 2.116(C)(10), this Court in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), stated:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the

pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

## C. INVERSE CONDEMNATION – GENERAL PRINCIPLES

Inverse condemnation concerns the taking of private property for a public use absent the commencement of condemnation proceedings, and pursuant to Const 1963, art 10, § 2, and US Const, Am V, "a victim of such a taking is entitled to just compensation for the value of the property taken." *Hart v Detroit*, 416 Mich 488, 494; 331 NW2d 438 (1982). In *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 548; 688 NW2d 550 (2004), this Court observed:

> What governmental action constitutes a "taking" is not narrowly construed, nor does it require an actual physical invasion of the property. No precise formula exists. Pertinent factors include whether the governmental entity abused its exercise of legitimate eminent domain power to plaintiff's detriment. Further, a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages. A plaintiff alleging a de facto taking or inverse condemnation must prove that the government's actions were a *substantial* cause of the decline of his property's value and also establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property. While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property. [Citations, ellipsis, and quotation marks omitted.]

"When considering whether a de facto taking has occurred, we must consider the form, intensity, and the deliberateness of the government actions in the aggregate." *Dorman v Clinton Twp*, 269 Mich App 638, 645; 714 NW2d 350 (2006) (citation and quotation marks omitted). A court "must examine the totality of the acts alleged to determine whether the governmental entity abused its exercise of eminent domain to [the] plaintiff's detriment." *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 130; 680 NW2d 485 (2004). "Not all government actions may amount to a taking for public use[,]" and "[t]he mere threat of condemnation and its attendant publicity, without more, is insufficient." *Id.*

In *Dorman*, 269 Mich App at 646, the panel also visited the issue of a regulatory taking, explaining as follows:

An inverse condemnation claim may be based upon the government's "regulatory taking" of private property. A regulatory taking occurs when the state effectively condemns, or takes, private property for public use by overburdening that property with regulations. There are two situations in which a property owner is automatically entitled to just compensation: (1) where the owner is deprived of *all* economically beneficial or productive use of his or her land, or (2) when the government physically and permanently invades any portion of the property. Where the government's actions merely diminish the owner's ability to freely use his or her land, the court must apply the balancing test set forth by the United States Supreme Court in *Penn Central Transportation Co v New York City*[, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978)]. In determining whether such actions amount to a taking under *Penn Central,* the court must consider: (1) the character of the government action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations. [Citations, quotation marks, and alteration brackets omitted.]

## D. DISCUSSION

We initially address Lakeside's arguments that its inverse condemnation claims were not moot, nor subject to governmental immunity. The trial court ruled that Lakeside's claims, to the extent that they were based on LAO § 15 and § 15-A, were rendered moot with the repeal of LAO § 15-A in 2012. We disagree with the trial court. The repeal of the ordinance after approximately ten years of existence and enforcement did not magically erase those 10 years of application and any resulting taking and injury. Mootness precludes the adjudication of a claim when the actual controversy fails to continue to exist, including circumstances wherein an issue is no longer "live" or the parties lack a legally cognizable interest in the outcome. *Mich Chiropractic Council*, 475 Mich at 371 n 15. As a general rule, courts will not decide moot issues. *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). "An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *Id.*; see also *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003) (when a subsequent event makes it impossible to fashion a remedy on an issue, the issue is rendered moot).

The invalidation of an ordinance by a court, while converting a taking into a temporary taking, "is not a sufficient remedy to meet the demands of the Just Compensation Clause." *First English Evangelical Lutheran Church of Glendale v Los Angeles Co*, 482 US 304, 319; 107 S Ct 2378; 96 L Ed 2d 250 (1987); see also *Cummins v Robinson Twp*, 283 Mich App 677, 704; 770 NW2d 421 (2009) (the temporary taking of private property for public use absent just compensation comes within the protection of the Fifth Amendment). "[W]here the government's activities have already worked a taking . . ., no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *First English*, 482 US at 321. Here, repeal of the ordinance by the township that had effectively been in place for 10 years may have halted a taking, but it did not preclude Lakeside from claiming at least a temporary taking with respect to the period during which LAO § 15 and § 15-A were applicable and enforceable. The situation did not concern normal delays attendant to, for example, obtaining building permits; rather, LAO § 15 and § 15-A governed for a decade. See

-13-

*id*. at 321 ("We limit our holding to the facts presented, and of course do not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us."). Accordingly, Lakeside's inverse condemnation claims, as based on the ordinances, were not moot simply because the township repealed LAO § 15-A in 2012.

Next, the trial court ruled that two of the inverse condemnation claims were effectively tort claims and that the township was thus shielded from liability on the basis of governmental immunity, MCL 691.1407. We hold that, to the extent that Lakeside alleged valid inverse condemnation claims and sufficiently supported those claims with documentary evidence, which issues we address below, governmental immunity could not bar the claims. "Since the obligation to pay just compensation arises under the constitution and not in tort, the immunity doctrine does not insulate the government from liability." *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 91 n 38; 445 NW2d 61 (1989); see also *Wiggins v City of Burton*, 291 Mich App 532, 574 n 9; 805 NW2d 517 (2011) ("Naturally, the City is not entitled to governmental immunity with respect to the . . . inverse-condemnation claim.").

We next address Lakeside's argument that the trial court was originally correct when it ruled that the 15-year statute of limitations found in MCL 600.5801(4) applied to Lakeside's inverse condemnation claims and that the court therefore erred when it altered its ruling and applied either a three-year limitations period, if the claims were treated as actually sounding in tort, MCL 600.5805(10), or a six-year limitations period, if the claims were truly viable inverse condemnation claims, MCL 600.5813. We note that Lakeside does not challenge the trial court's ruling that Lakeside's due process and equal protection claims were time-barred; therefore, summary dismissal of those claims must stand.[8] We further note that Lakeside does not take issue with the trial court's determination that Lakeside's claims accrued in 2002. Accordingly, we shall use 2002 as the date of accrual relative to Lakeside's inverse condemnation claims, without commenting or ruling on the correctness of that accrual date.

In *Hart*, a class action suit alleging inverse condemnation was commenced after the city demolished numerous structures as part of an urban renewal effort. The lawsuit was initiated " 'after all the parcels involved in the controversy were conveyed for nonpayment of taxes, and more than three years after the right of equity of redemption had expired with respect to each parcel.' " *Hart*, 416 Mich at 493 (citation omitted). Our Supreme Court was tasked with determining the proper statute of limitations to apply to an inverse condemnation claim. The

---

[8] In its reply brief, Lakeside argues that count VII of its third amended complaint concerned an alleged procedural due process violation relative to the lack of notice regarding the May 2010 board meeting in which Lakeside's variance request was partially granted; therefore, count VII was not time-barred even if a three-year statute of limitations applied. However, Lakeside did not present this issue or argument in its main brief on appeal, and we decline to address it. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) (reply briefs are limited to rebuttal and raising an issue for the first time in a reply brief does not suffice to present the matter for appeal).

*Hart* Court first rejected the argument that no statute of limitations should apply. *Id.* at 496. The Court then examined whether the 15-year limitations period in MCL 600.5801(4), the three-year limitations period in MCL 600.5805(7),[9] or the six-year limitations period in MCL 600.5813 should be applied to inverse condemnation claims. *Id.* at 496-503. With respect to MCL 600.5801, sometimes referred to as the adverse possession statute, the Court ruled:

> Plaintiffs contend that if a statute of limitations must apply, the one most closely analogous to an inverse condemnation action is the 15-year limitation which applies to adverse possession actions. On the facts of this case, however, the analogy falls short.

> It is well-established in Michigan that adverse possession must be actual, visible, open, notorious, exclusive, continuous, under cover of claim of right and uninterrupted for the statutory period. If the party alleging title by adverse possession does not prove it by clear and positive proof, then the original owner regains possession of the property.

> In contrast, a party who institutes an inverse condemnation action usually concedes that the condemnor has taken the property indirectly by its actions preceding formal institution of condemnation proceedings. It would be unusual for the condemnor's acts to be of such a degree as to satisfy the strict test for adverse possession. Plaintiffs do not allege that the city's actions here would satisfy this test. Neither would the stipulated facts support such a claim.

> Furthermore, the plaintiff in an inverse condemnation suit does not ordinarily seek repossession of his property, but rather, just compensation for the value of the property taken. This is again unlike the adverse possession case where, if title to the property is secured by the adverse possessor, the original owner is not entitled to payment.

> We do recognize that in actions such as the present one compensation to the original owner, as a substitute for the property itself, is the only viable alternative. The eminent domain power of the condemnor leaves the property owner with no option other than to seek compensation. *Accordingly, these differences do not necessarily cause us to reject the 15-year adverse possession limitation period*. Nevertheless, a final fatal flaw exists in plaintiffs' analogy with respect to this case.

> The concept of adverse possession rests upon an interest in title to property. . . . [T]he rationale for applying the adverse possession limitation period rests on the owner's present interest in the property. . . . .

---

[9] The pertinent language is now found in subsection (10) of the statute. See 1978 PA 495, 2002 PA 715, and 2012 PA 582.

However, plaintiffs here lost all title and interest to the properties upon the expiration of the period of redemption following the sale of the properties for nonpayment of taxes. When the present action was commenced, plaintiffs had no ownership rights in the properties, legal or equitable. Under such circumstances, there is no foundation to apply a 15-year limitation period that is predicated upon the plaintiff having continual ownership rights.

*We do not foreclose the possibility that on the proper facts, where a plaintiff retains ownership rights in the property when suit is brought, the analogy to adverse possession may be applied. However, on the facts of this inverse condemnation action, we decline to adopt the adverse possession statute of limitations.* [*Hart*, 416 Mich at 497-499 (citations omitted; emphasis added).]

The *Hart* Court also rejected application of the three-year limitations period currently found in MCL 600.5805(10), because, although it applies, in part, to the recovery of damages for an injury to property, a plaintiff in an inverse condemnation action "must prove that a taking in the sense of conversion has occurred, not merely that he has suffered injury to his property." *Id.* at 502. The Court determined that, under the facts presented, the six-year limitations period in MCL 600.5813, which is applicable to "personal actions" not otherwise addressed by the Legislature, should be applied to the inverse condemnation claims. *Id.* at 502-503. The *Hart* Court observed:

We are cognizant that the instant action has not been clearly provided for in any specific statute of limitations. Neither do the facts of this case come within the confines of either the fifteen- or three-year statute by analogy. As the plaintiffs are not seeking recovery of their lands but compensation for a taking by the sovereign, this cause of action may be logically conceptualized as a personal action which arises in relation to a former interest in real property. We thus conclude that the general six-year statute of limitations applies to this action. [*Id.* at 503.]

As reflected in *Hart*, the Supreme Court suggested that applying the 15-year limitations period in MCL 600.5801(4) may be justified in an inverse condemnation action where a plaintiff retains ownership rights in the property at the time the action is brought, as is the case here, even though an inverse condemnation claim does not fit neatly within the parameters of MCL 600.5801, which concerns actions seeking the recovery or possession of property. In *Difronzo v Village of Port Sanilac*, 166 Mich App 148; 419 NW2d 756 (1988), this Court, relying on the language in *Hart*, took that next step and applied the 15-year limitations period to a case involving a plaintiff who held ownership of shorefront property at the time he commenced suit. In *Difronzo*, the defendant DNR deeded Lake Huron bottomland to the defendant Village of Port Sanilac, and the village and defendant Port Authority for the Harbor of Port Sanilac made plans to construct a harbor and associated facilities, with the bottomland eventually being used as part of the harbor project. *Id.* at 150. This Court provided the following details:

We now turn to the statute of limitations issue . . . . Although plaintiff has alleged several bases for his cause of action, his most significant allegation is that defendants' action constitutes an inverse condemnation. In response to this

allegation the defendants have established a straw man; they argued below, and on appeal, that plaintiff had no possessory interest in the Lake Huron bottom land and therefore nothing was taken. Insofar as it goes, that is the case. However, plaintiff's complaint clearly alleges that defendants have encroached on his property, that he has lost frontage property and that defendants have interfered with his littoral or riparian rights. Defendants do not deny constructing a walkway across plaintiff's property and do not deny construction of harbor facilities fronting plaintiff's property. [*Id.* at 151-152.]

The *Difronzo* panel noted that *Hart* was readily distinguishable because the plaintiff in *Difronzo* still retained "ownership rights in the lakeshore property he claim[ed] ha[d] been de facto taken." *Id.* at 153. This Court also pointed out that the Supreme Court in *Hart* had not foreclosed the possibility of applying the 15-year limitations period to an inverse condemnation action where a plaintiff retained an ownership interest at the time of suit. *Id.* The *Difronzo* panel then ruled:

> The Supreme Court noted that the rationale for applying the adverse possession limitation period rested on the owner's present interest in the property. Without question plaintiff has a present interest in lake frontage and riparian rights.
>
> Furthermore, this application to inverse condemnation actions of the fifteen-year limitation period found in the adverse possession limitation statute comports with the general rule in this country. We therefore conclude that plaintiff's action is governed by the fifteen-year statute of limitations. MCL 600.5801(4) . . . . [*Id.* at 153-154 (citations omitted).]

Here, the trial court concluded that the 15-year limitations period did not apply, given that the township never actually adversely possessed or occupied any of Lakeside's property and that Lakeside was not seeking to recover possession of its property, but was instead requesting compensatory damages for a taking based on inverse condemnation theories. In that same vein, the township argues that *Difronzo* can only be read to apply to cases where there was an actual physical invasion of property. We first note that the Supreme Court in *Hart* recognized that a party claiming inverse condemnation is unlikely to satisfy the requirements for adverse possession and does not seek to actually recover the property; rather, such a party generally relies on indirect actions amounting to a taking and solely pursues monetary or just compensation. *Hart*, 416 Mich at 497-498. However, the Court indicated that "these differences do not necessarily cause us to reject the 15-year adverse possession limitation period." *Id.* at 498. And in *Difronzo*, this Court certainly was not deterred by the fact that part of the plaintiff's inverse condemnation claim, apart from the physical encroachments, pertained to interference with littoral or riparian rights relative to actions taken by the defendants in connection with the lake's bottomland adjacent to the plaintiff's shorefront property. The *Difronzo* plaintiff did not claim an interest in the bottomland, nor did he seek possession of the bottomland. *Difronzo*, 166 Mich App at 154-155 (the trial court's error stemmed from its "erroneous initial premise . . . that plaintiff [was] claiming an interest in the bottom land"). We do not construe *Difronzo*'s application as being limited to inverse condemnation claims entailing physical intrusions of a

plaintiff's property. Additionally, as indicated above, there is no dispute that Lakeside held an ownership interest in the property when it filed suit against the township.

We recognize that *Difronzo*, having been issued in 1988, does not constitute binding precedent for purposes of this panel's ruling. MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990[.]").[10] However, *Difronzo* has represented the law in Michigan on the issue presented for nearly 30 years, and this Court in multiple unpublished opinions has recognized and honored the 15-year limitations period pursuant to *Difronzo* in the context of inverse condemnation actions. Moreover, the language used by our Supreme Court in *Hart* somewhat telegraphed a view that, if a plaintiff retained ownership of property at the time of instituting an inverse condemnation suit, the proper statute of limitations to apply would be the 15-year period found in MCL 600.5801(4). And the *Difronzo* panel picked up on that signal. We note that the Supreme Court denied leave in *Difronzo*. 431 Mich 852 (1988). Under these circumstances, the issue is best left to our Supreme Court if it wishes to impose a different limitations period and overrule *Difronzo*. In sum, the trial court erred to the extent that it applied a six-year limitations period to Lakeside's inverse condemnation claims.

In the alternative, the trial court also ruled that Lakeside's inverse condemnation case was in essence a tort action for damages based on interference with a business venture, thereby implicating a three-year statute of limitations. Given this ruling, as well as the ruling alluded to earlier that governmental immunity barred the inverse condemnation claims because they sounded in tort, we shall now address whether Lakeside alleged valid inverse condemnation claims and sufficiently supported those claims with documentary evidence. The trial court found that Lakeside had not done so, which served as yet another basis for the trial court to grant summary disposition in favor of the township. The trial court opined that Lakeside had not shown that any taking or de facto taking had occurred and that the inverse condemnation claims were inadequate and speculative, relying only on the possibility of an attempt by the township to acquire Lakeside's property and on "an ordinance that was there and then repealed[.]"

We initially find it helpful to precisely define what exactly Lakeside is claiming as the bases of its inverse condemnation suit. We find that the allegations in the third amended complaint that encompassed the three separate inverse condemnation counts overlapped and were often redundant. And Lakeside itself, on appeal, emphasizes that its inverse condemnation lawsuit is predicated on the aggregate of the township's actions over the years. Lakeside argues that "[w]hen taken collectively, those actions are sufficient for a reasonable jury to conclude that the [t]ownship inversely condemned Lakeside's [p]roperty[.]" Specifically, Lakeside argues that it is entitled to just compensation for inverse condemnation, where: (1) the township planned for the acquisition of Lakeside's property to use for public access to the lake and a marina; (2) the township purchased adjacent properties in piecemeal fashion, but delayed in purchasing or condemning Lakeside's property, which never did occur, in a concerted effort to drive down the property's value; (3) the township claimed public ownership of Lakeside's property by

---

[10] *Difronzo* was, however, binding on the trial court.

demanding public access and the removal of fences and signs barring access; (4) the township contacted the DEQ to circumvent or undermine Lakeside's application for a permit to construct a campground; and where (5) the township prohibited Lakeside from developing its property as to a campground and marina through the unlawful adoption and enforcement of LAO § 15 and § 15-A, which were true zoning ordinances, not general police power ordinances.[11]

With respect to Lakeside's arguments concerning township plans to acquire or perhaps condemn Lakeside's property, the 1991 board meeting minutes and the 1995 downtown redevelopment plan did contemplate, in a broad conceptual manner, the potential acquisition of Lakeside's property. But the township clerk's affidavit made clear, and it was evidentially unrebutted, that no formal, procedurally-required steps were ever taken by the township toward actually purchasing Lakeside's property. We fail to see how generalized plans conceiving of a future acquisition of property can amount to a taking under the state or federal constitutions requiring the payment of just compensation, especially given that an actual threat of condemnation and the attendant publicity are even insufficient to support an inverse condemnation action. *Merkur Steel*, 261 Mich App at 130; *Heinrich v Detroit*, 90 Mich App 692, 698; 282 NW2d 448 (1979). Moreover, "[t]he promulgation and publicizing of plans does not constitute a taking of property even though such publicity hinders a sale of the property." *Muskegon v DeVries*, 59 Mich App 415, 419; 229 NW2d 479 (1975).[12]

Further, the township's purchase of surrounding or adjacent properties did not effectuate a taking of Lakeside's property. The township clerk averred in his affidavit that the purchases of property in the area resulted from opportunities that presented themselves and that the purchased properties did not interfere with the use or diminish the value of Lakeside's property, nor did the properties compete against Lakeside's land. Lakeside failed to present evidence that adequately countered these averments. Next, with respect to the township's demands for Lakeside to remove fences and signs and to allow public access relative to Lakeside's property, the demands, which we agree were improper, were rejected outright by Lakeside, and properly so. And the township did not subsequently take any actions to force removal of the signs and fences or to force Lakeside to permit public access. There simply was no taking based on the township's rejected and dropped public-access demands. With regard to the township's correspondence to the DEQ, alerting the DEQ of LAO § 15 when the DEQ was entertaining Lakeside's campground-permit application, the DEQ expressed that the ordinance had no bearing on its decision-making process, and it approved the application. Again, we fail to see how the

---

[11] Lakeside does not argue on appeal that a taking occurred as a result of any delay in obtaining the partial variance.

[12] The *DeVries* panel elaborated:

> Logically extended this rule would similarly apply to the promulgation, publication and implementation of an urban renewal project which hinders the leasing of property. Something more is required before a landlord has an enforceable claim against a condemning authority for lost rents. [*DeVries*, 59 Mich App at 419.]

township's action in writing the letter to the DEQ effectuated a taking, given the DEQ's response. Even if the township intended to create a roadblock in regard to Lakeside's pursuits, the DEQ did not reject the plans or deny the permit application, so the township's correspondence was essentially meaningless. Because each of the township's actions addressed above did not, alone, constitute a taking or inverse condemnation or even partially lend themselves to such a conclusion, the actions viewed collectively or in the aggregate could not have amounted to a taking.

This leaves us with the ordinances and whether their application gave rise to a taking, or at least a genuine issue of material fact on the matter. We first note that the trial court, as best we can glean, rejected the argument that the ordinances supported Lakeside's inverse condemnation claims, considering that LAO § 15-A was repealed in 2012. This reasoning is simply a rehashing of the mootness decision and we reject it. The trial court ultimately did not rule on whether LAO § 15 and § 15-A were effectively zoning ordinances. Lakeside maintains that the two ordinances were de facto "zoning" ordinances and were not properly enacted pursuant to the requirements of the former TZA, as to LAO § 15 (adopted in 2002), and the MZEA, as to LAO § 15-A (adopted 2007). Given the nature of the trial court's ruling, it was not necessary for the court to rule on the matter. And Lakeside's motion for partial summary disposition concerning the validity of LAO § 15 and § 15-A was not filed until the day of the hearing on the township's multiple motions for summary disposition; Lakeside's motion was never heard, so it would not have even been proper for the trial court to rule on that particular motion.

In *Square Lake Hills Condo Ass'n v Bloomfield Twp*, 437 Mich 310; 471 NW2d 321 (1991), our Supreme Court addressed, in part, the question whether a township ordinance fell under the authority of MCL 41.181 or whether it was a zoning ordinance. The ordinance at issue "limited township riparian property owners, with a minimum of 150 feet of lake frontage, to launching and docking one motorboat." *Id.* at 315. The Supreme Court ruled:

> [We] cannot agree . . . that [the] ordinance . . . is a zoning ordinance because it limits the use of lake frontage based on the number of feet of lake frontage owned. [The] . . . ordinance . . . is *not* a zoning ordinance. The ordinance does *not* regulate the use of land or lake frontage. Rather, it regulates an "activity" by limiting the number of boats that can be parked or "launched and/or docked adjacent to each separate frontage."
>
> A zoning ordinance is defined as an ordinance which regulates the use of land and buildings according to districts, areas, or locations. The question whether or not a particular ordinance is a zoning ordinance may be determined by a consideration of the substance of its provisions and terms, and its relation to the general plan of zoning in the city.
>
> . . .
>
> Launching and docking boats on inland lakes are "activities," and the number of boats that can be launched or docked is very much akin to a parking regulation on a residential street. It follows that since township parking

regulations on residential streets are within the scope of a township's regulatory police power, a township regulation of docking and launching boats on its inland lake is within the same scope of regulatory police power.

We therefore conclude that townships have the authority, under the township ordinance act, [MCL 41.181,] to enact ordinances regulating boat docking and launching on inland lakes as a measure to protect the public health, safety, and welfare of persons and property within a township. [*Square Lake*, 437 Mich at 323-325 (citations omitted).]

The Supreme Court indicated that MCL 41.181 provided townships with a statutory mechanism to adopt and enforce purely local regulations in order to enhance the health and safety of community members and that regulating boat docking and launching was a perfectly reasonable employment of township police power. *Id.* at 322. The *Square Lake* Court noted the "problems inherent in overcrowded lakes" and the hazards created by boating absent implementation of reasonable safety precautions. *Id.* at 325, 327.

Here, LAO § 15, ¶ 3.1 provided, "No parcel or lot may be used as access property unless said parcel or lot meets all of the following minimum requirements[,]" and LAO § 15-A, ¶ 3.1 similarly stated, "No parcel or lot may be used as an access property or to access a lake unless said parcel or lot meets all of the following minimum requirements." These provisions appear, at first glance, to have "regulate[d] the use of land." *Square Lake*, 437 Mich at 323. However, on closer inspection, the ordinances actually regulated activities in the water. If, for example, a parcel owner allowed more than one couple or family to set up a campsite on a 50-foot stretch of beachfront, the ordinances would not have precluded it, *unless the campers used or intended to use the property to access the lake*. It was ultimately activities in and use of the lake that was being regulated by the ordinances at issue, not the use of the land. However, it is ultimately unnecessary for us to definitively determine whether the ordinances were zoning ordinances, given that, assuming that they were zoning ordinances, their application did not result in the taking of Lakeside's property.

Our Supreme Court and this Court have held that to demonstrate that a township ordinance was confiscatory or served to wrongfully take property, the property owner must prove that application of the ordinance precluded the use of the property *for any purpose to which it was reasonably adaptable. Kirk v Tyrone Twp*, 398 Mich 429, 444; 247 NW2d 848 (1976) (noting that "[a]lthough there is no doubt the subject land's value as a mobile home park exceeded its value as residential property, it still was worth a great deal as zoned[,]" and that "[a] showing of confiscation will not be justified by showing a disparity in value between uses"); *Hecht v Niles Twp*, 173 Mich App 453, 459-460; 434 NW2d 156 (1988). Here, Lakeside failed to present any evidence showing that LAO § 15 and § 15-A precluded the use of its property for any purpose to which it was reasonably adaptable, nor does Lakeside argue so on appeal. Indeed, the property had previously been used to operate a hotel and motel. Accordingly, application of the ordinances did not result in the confiscation of Lakeside's property, such that they supported Lakeside's inverse condemnation action.

In the context of regulatory-taking analysis, there was no evidence showing that the ordinances deprived Lakeside of all economically beneficial or productive use of its property,

nor was there evidence showing that the township physically and permanently invaded Lakeside's property. *Dorman*, 269 Mich App at 646. And while the ordinances may have diminished Lakeside's ability to freely use its property, Lakeside does not even engage in the *Penn Central* balancing test, which takes into consideration the character of the government action, the economic effect of the regulation or action on the property, and the extent by which the regulation or action interfered with distinct, investment-backed expectations. *Dorman*, 269 Mich App at 646. As the Supreme Court observed in *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998):

> "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." [Citation omitted.]

We would also note that, with respect to distinct, investment-backed expectations, Lakeside did not even contemplate the construction of a campground and marina until 2004, years after the property had been acquired. In sum, Lakeside's inverse condemnation claims simply cannot withstand scrutiny, and the township was entitled to summary disposition on the claims.[13]

---

[13] Lakeside also challenged the trial court's determination that the inverse condemnation claims failed because there was no proof of a loss of market value and because any claim of lost profits was speculative. "The purpose of just compensation is to put the property owner in as good a position as it would have been in had its property not been taken." *Merkur Steel*, 261 Mich App at 134. With respect to temporary takings, the best approach "is to base the just compensation award on the fair market value of the property." *Id.* at 134-135. Damages are not allowable in condemnation cases unless they can be proven with reasonable certainty. *Id.* at 135. The loss of speculative profits cannot be an element of compensation. *Id.* "But it is error to not allow a property owner to present evidence of the most profitable and advantageous use it could make of the land even if the use was still in the planning stages and had not been executed." *Id.* (citation and quotation marks omitted). Lost profits can potentially be recovered if not speculative, and there is no formula or artificial measure of damages relative to condemnation cases, with the amount to be recovered generally being left to the discretion of the trier of fact after consideration of all the evidence. *Poirier v Grand Blanc Twp*, 192 Mich App 539, 543, 549; 481 NW2d 762 (1992). Lakeside had obtained DEQ approval of a 33-site campground, and it submitted detailed financial documents showing estimated lost profits. We question the trial court's dismissal of the inverse condemnation claims on the bases of speculative lost profits and a failure to show a loss of market value. However, given our ruling, we decline to rule on the issue.

## IV. CONCLUSION

Lakeside does not challenge the summary dismissal of the equal protection and due process claims; therefore, dismissal of those claims is affirmed. Furthermore, Lakeside failed to adequately allege and/or factually support its inverse condemnation claims, and dismissal of those claims is also affirmed.

Affirmed. Having fully prevailed on appeal, the township is awarded taxable costs pursuant to MCR 7.219.

/s/ William B. Murphy
/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello