DISSENT
BERNICE B. DONALD, Circuit Judge,
dissenting.
I agree with the majority that the Herrs have valid existing rights to which any regulation by the Forest Service must be subservient. I agree also that the district court erroneously concluded that the Herrs’ rights were not “existing” because the Herrs purchased their land after the Forest Service passed Amendment No. 5. Where I disagree, however, is with the majority’s conclusion that a federal agency, in the same manner as a state, may not impose reasonable restrictions on littoral and riparian rights, when expressly authorized by Congress to do so.
First, as the Supreme Court has held, “[t]he general government doubtless has a power over its own property analogous to the police power of the several states, and the extent to which it may go in the exercise of such power is measured by the exigencies of the particular case.” Kleppe v. New Mexico, 426 U.S. 529, 540, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976) (citing Camfield v. United States, 167 U.S. 518, 525, 17 S.Ct. 864, 42 L.Ed. 260 (1897)). This also “includes the power to regulate in a manner affecting non-federal property.” Burlison v. United States, 538 F.3d 419, 432 (6th Cir. 2008). As such, the power of Congress to regulate under the Property Clause “may have some effect on private lands not otherwise under federal control.” Id. (quoting Kleppe, 426 U.S. at 546, 96 S.Ct. 2285). Second, as even the majority notes, Congress has authorized the Forest Service to regulate the Sylvania Wilderness. This authority, “subject to valid existing rights,” is coextensive with Congress’ own authority under the Property Clause when the Forest Service acts to preserve the wilderness character of the Sylvania Wilderness. It thus follows that the Forest Service possesses a power that is “analogous to the police power of the several states,” and where the Forest Service does not exceed the scope of the permissible police power of the state, it may exercise this power.
It is important then that we first examine the scope of the state’s power to regulate littoral and riparian rights. In Michigan, “[t]he rights associated with riparian *360 ownership generally include ... the right to a reasonable use of the water for general purposes such as boating, domestic use, etc.” Tennant v. Recreation Dev. Corp., 72 Mich.App. 183, 249 N.W.2d 348, 349 (1976). These rights, however, are not without limitation. To protect the public safety, Michigan permits regulation of the operation of vessels on the waters of the state. Mich. Comp. Laws § 324.80108. To this end, Michigan courts have upheld restrictions from local governments as they relate to the riparian and littoral rights of citizens within their jurisdictions. See, e.g., Square Lake Hills Condominium Ass’n v. Bloomfield Twp., 437 Mich. 310, 471 N.W.2d 321, 326 (1991) (permitting Bloomfield Township to regulate boat docking and launching on inland lakes under the township’s police power); Miller v. Fabius Twp. Bd., 366 Mich. 250, 114 N.W.2d 205, 209 (1962) (allowing time regulations on water siding).
Recognizing that the state may impose such regulations, the majority nevertheless concludes that the Forest Service may not regulate Crooked Lake in this manner because Michigan has not imposed such restrictions itself. But Forest Service’s powers, while restricted, do not depend on state action. Put another way, state law determines the scope of the Forest Service’s authority to regulate the surface of Crooked Lake because Congress has placed the specific constraint of “subject to valid existing rights”; rights that are determined by state law. But state regulation is not a prerequisite to the Forest Service’s ability to regulate. The determining factor, rather, is whether the regulation is a proper exercise of the state’s police power. And, as previously mentioned, Michigan state law confirms that restrictions on kinds of vessels and speed of motorboats are permissible.
The next question is the reasonableness of the restriction. “The reasonableness of an ordinance ... depends upon the particular facts of each case. The test for determining whether an ordinance is reasonable requires us to assess the existence of a rational relationship between the exercise of police power and the public health, safety, morals, or general welfare in a particular manner in a given case.” Square Lake Hills, 471 N.W.2d at 324 (citation omitted). As the district court noted, Amendment No. 5’s restrictions are rationally related to achieving the Michigan Wilderness Act’s goal of preserving the wilderness character of Sylvania. Also, these restrictions are certainly reasonable. Amendment No. 5 does not ban the use of all motorboats on the surface of Crooked Lake; rather, it merely restricts the use of gas-powered motorboats, the size of the motor, and the speed at which a boat may travel on ninety-five percent of the lake.
The majority approaches the issue of reasonableness by looking at whether recreational boating constitutes reasonable use under Michigan law. I agree that the use of gas-powered motorboats is generally not unreasonable under Michigan law; but this alone is not dispositive of whether the Forest Service’s ban of such use on Crooked Lake is unreasonable. Neither is the fact that the Forest Service has previously allowed motorboat use on the entire surface of Crooked Lake. As the majority notes, a pre-existing use does not always amount to a right. Initially, what was reasonable in the past is not necessarily reasonable today. But more importantly, the Heirs’ right to engage in recreational mo-torboating under Michigan law, which does not necessarily equate to a right to use gas-powered motorboats, is not immune from reasonable future regulation. “Congress chose to ‘grandfather’ private rights in the ‘subject to valid existing rights’ phrase, but in doing so, it never intended *361 that those rights be ossified against further regulation.” Stupak-Thrall v. United States, 89 F.3d 1269, 1271 (6th Cir. 1996) (memo) (Moore, J., concurring in order affirming district court opinion by divided en banc vote).
Ultimately, I believe that Amendment No. '5 was squarely within the Forest Service’s authority to enact, and that the restrictions do not infringe on the Herrs’ “valid existing rights.” For these reasons, I would affirm the district court. I respectfully dissent.